COMMISSIONER OF INTERNAL REVENUE
v. FLEMING.

FLEMING v. COMMISSIONER OF INTERNAL REVENUE.
Nos. 7899, 7914.

Circuit Court of Appeals, Fifth Circuit.
March 7, 1936.

FOSTER, Circuit Judge, dissenting.

———◆———

John MacC. Hudson, Sewall Key, and Louise Foster, Sp. Assts. to Atty. Gen., Frank J. Wideman, Asst. Atty. Gen., and Robert H. Jackson, Asst. Gen. Counsel, Bureau of Internal Revenue and John D. Kiley, Sp. Atty., Bureau of Internal Revenue, both of Washington, for the Commissioner.

Geo. S. Atkinson, of Dallas, Tex., for Fleming.

Palmer Hutcheson, of Houston, Tex., for amicus curiæ.

Before FOSTER, SIBLEY, and WALKER, Circuit Judges.

SIBLEY, Circuit Judge.

These cases bring under review redeterminations by the Board of Tax Appeals of income taxes of William Fleming for 1928 and 1929 by which his income arising on a sale in each of those years of an interest in oil leases in Texas was taxed after allowing him a percentage depletion of 27½ per cent. against such part of the money received as came from reserved oil, but denying it as to such part as was the purchaser's cash. The Commissioner contends that neither kind of payment should carry a depletion allowance, and the taxpayer contends that both should.

Fleming owned an undivided interest in two oil and gas leases of the usual type, on which the landowner had reserved one-eighth royalty. In 1928, by a written instrument joined in by the other owners of one of these leases, they agreed with a purchaser "to sell and convey by proper assignment and transfer all their entire interest in and to the above described oil and gas lease and oil, gas and other minerals produced therefrom. * * * As consideration for said property second party hereby contracts to pay first parties in the proportion of their respective interests * * * $1,000,000 in cash * * * upon the execution and delivery by said first parties of proper legal instruments of conveyance * * * and $1,000,000 out of one-fourth of all oil, gas and other minerals produced from said working interest in said lease, being one-half of the interest hereby conveyed; said $1,000,000 is not and never shall be a personal obligation or liability against the second party, but shall be paid only out of the products if, as and when produced and sold from the said premises." The sale in 1929 was of an interest in a similar oil and gas lease, together with described physical equipment, part of the price to be paid by checks on the execution of legal transfer and conveyance and "the further sum of $225,000 to be paid to the first parties only out of the one-half of seven-eighths of the first crude oil produced, saved and marketed from the premises covered by said lease; if, as and when produced, saved and marketed, and not

otherwise." Large amounts were received by Fleming in each year, both out of the cash payments and from oil produced. We have thus to do with a lessee's interests in oil leases, with income realized from dealings in them, and with depletion allowances on them.

 It must be always remembered that taxation under the Sixteenth Amendment can only be on income as distinguished from capital, on the increment of wealth realized by its conversion or by its use in conjunction with labor and not on the original capital. Eisner v. Macomber, 252 U.S. 189, 40 S.Ct. 189, 64 L.Ed. 521, 9 A.L.R. 1570. A sale of property gives rise to income only to the extent that gain is realized over investment. When an exhaustible element of land is drawn upon for commercial use, and the product whether in a raw or improved state is sold to realize income, a capital investment is used up whose integrity ought to be safeguarded. See United State v. Ludey, 274 U.S. 295, 302, 47 S.Ct. 608, 71 L.Ed. 1054; Helvering v. Falk, 291 U.S. 183, 187, 54 S.Ct. 353, 78 L.Ed. 719. This is done by subtracting from the proceeds of sale an allowance for the exhaustion. The Revenue Act of 1928, like its predecessors, provides for such an allowance. "In the case of mines, oil and gas wells, other natural deposits, and timber, a reasonable allowance for depletion and for depreciation of improvements, according to the peculiar conditions in each case; such reasonable allowance in all cases to be made under rules and regulations to be prescribed by the Commissioner, with the approval of the Secretary. In the case of leases the deduction shall be equitably apportioned between the lessor and lessee." Section 23 (*l*), 26 U.S.C.A. § 23 note. Other apportionments are mentioned for life estates and trust interests. Under previous laws this allowance was measured by endeavoring to estimate the total quantity of the exhaustible element and valuing it in place, and by allowing such proportion of that value as was really withdrawn during the taxable year. When the taxpayer was the discoverer of a mineral deposit, by generosity the valuation was not on a basis of cost to him, but it could be increased to include the added value resulting from his discovery. The act of 1928 continues this recognition of discovery value in case of mines, but since the calculation proved difficult and uncertain as applied to oil and gas deposits, it has been abandoned as to

them and a flat percentage of 27½ per cent. of the income from them fixed as a fair average value to be deducted from the proceeds as representing the capital exhaustion, to apply not only in favor of a discoverer but to every case in which such depletion is to be allowed, with limitations not here important. Section 114 (b) (2, 3), 26 U.S.C.A. § 114 note. This percentage depletion allowance is to be taken in the year that income from oil or gas is received and taxed, whether the oil whose price the income represents be taken from the ground that year or not. Herring v. Commissioner, 293 U.S. 322, 55 S.Ct. 179, 79 L.Ed. 389. This is so because that income includes an element of capital which must be fairly eliminated before taxable income is ascertained. On the other, hand, when income is gotten, not by the operation of mines or wells and a disposition of their products, but from a sale of the capital asset as a whole, depletion is not at all involved, but the capital investment is preserved by deducting its cost. Accordingly, the act, section 113, 26 U.S.C.A. § 113 note, contains no depletion allowance touching sales. Section 102, 26 U.S.C.A. § 102 and note, however, makes a special provision "in the case of a bona fide sale of mines, oil or gas wells, *or any interest therein*," where the principal value is due to the taxpayer's explorations of the property, limiting the tax to 16 per cent. of the selling price. The last-mentioned section is important here as particularly recognizing sales of interests in such property as is here involved, and providing for their taxation.

 Now in Texas, oil and gas in the ground are capable of ownership and sale separate from the soil which contains them, and leases such as are here involved convey to the lessee title to the oil and gas except such interests as are reserved to the lessor. In Louisiana and many other states this is not true, but the lease only gives the lessee the right to use the land to capture the oil and gas which belong fully to no one until reduced to possession. Nevertheless, in order to give the federal income tax laws a uniform operation throughout the United States, these local differences are ignored in dealing with income and deductions; and an oil and gas lease is from the standpoint at least of the landowner regarded as only a means of producing oil and gas from his land, and what he gets from it, whether in money or in oil or the proceeds of oil as produced, is in-

come from the use of his land. Even when a lump sum is paid down by a lessee as a bonus in addition to a retained royalty, the bonus is considered as being an advance on royalties and to be income and not purchase money. But the exhaustion of the capacity of the land to produce oil is nevertheless held in view, and depletion allowances are due both on the bonus and on the royalty receipts. Burnet v. Harmel, 287 U.S. 103, 53 S.Ct. 74, 77 L.Ed. 199; Murphy Oil Co. v. Burnet, 287 U.S. 299, 53 S.Ct. 161, 77 L.Ed. 318. So also the lessee, because the statute requires an apportionment of the depletion allowance, is entitled to have credit against the income he receives from disposing of his part of the oil produced, and this was held to be a lessee's right even before the statute expressly recognized it. Lynch v. Alworth-Stephens Co., 267 U.S. 364, 45 S.Ct. 274, 69 L.Ed. 660. It is asserted generally that all persons who have "an economic interest" in the oil and gas in the ground have a right to share in the depletion allowance. Palmer v. Bender, 287 U.S. 551, 53 S.Ct. 225, 77 L.Ed. 489; Helvering v. Twin Bell Oil Syndicate, 293 U.S. 312, 55 S.Ct. 174, 79 L.Ed. 383. But a lessee's interest is everywhere regarded as vendible real property, and the lessee may sell his lease or an interest in it and may thus realize income in the way of a profit on the sale. Such income is not subject to be reduced by the percentage depletion allowance, which applies only to income arising from the operation of the oil and gas well. Darby-Lynde Co. v. Alexander (C.C.A.) 51 F.(2d) 56.

In this case, the Commissioner contends that in the sale of each lease the whole amount paid, whether in cash or from production and sale of oil, was purchase money and subject to no depletion, pointing to Pugh v. Com'r (C.C.A.) 49 F.(2d) 76. The taxpayer asserts that the money got from the production of oil was certainly subject to depletion because he had "an economic interest" in the oil in the ground, and that what was paid in cash stands on the same footing as a cash bonus paid to a lessor, citing especially Palmer v. Bender, supra, decided since the Pugh Case and involving the transfer of a lessee's interest for cash and oil payments. In Palmer v. Bender, however, the transferor reserved an additional royalty, and so was in reality a sublessor, and the cash paid him could more readily be treated as a bonus or advance royalty. We think the Board rightly held as to the transactions here in question that part of the income arose from a sale of a capital asset and was not subject to a depletion allowance, and that part of it arose from the operation of the oil wells and was so subject. Undoubtedly the taxpayer's interest in the leases, in Texas as elsewhere, was an estate in land, property capable of being sold and transferred for money. Very clearly his interests were sold and transferred, and the cash on payment of which conveyances were to be made (and we suppose were made) was purchase money.* The making of the sale depleted nothing. The money paid did not come actually or in anyone's contemplation from the production of oil, but was the purchaser's independent capital invested by him in the oil lease. If he in turn should sell to another the next day, gain or loss might be realized, but no depletion allowance could be claimed. A number of such transactions might occur during the taxable year having no reference to the removal of oil and involving no depletion. Contrariwise the payments from oil were not the independent capital of the purchaser, but represent a part of the oil reserve. The purchaser was not bound personally for these payments. If the oil ran short or proved nonexistent, the taxpayer was a proportional loser. While the contract was phrased as though the lease and all the oil were sold, and as though the proceeds were to be paid back to the seller, the real essence of the transaction was that the lease was sold and all the oil *except* that whose proceeds were to come to the selling taxpayer. The conveyances executed when the cash was paid might very appropriately have *reserved or excepted* sufficient oil from one-half of that thereafter run to pay the agreed sum. It is true that no royalty to continue indefinitely was reserved, and that the reservation was limited not to so many barrels nor to such a length of time, but to so much oil as would sell for the agreed sum. But it was in effect an exception or reservation of oil. The thing sold for the cash consideration was the lease and all the oil except that so reserved. If the wells had been agreed to be operated before conveyance until the seller should receive this oil payment, it is evident that the depletion allowance would apply to his income from the oil. The source of the

---

\* Considerable equipment also was sold in one of the transactions.

income and the seller's economic interest in the production of the oil were exactly the same under the agreement that was made. He is equally entitled to the depletion allowance. The purchaser could in no justice claim it as a deduction from his income. We have thus looked at the transaction broadly, as was done in Palmer v. Bender, and not technically, as was done in the Pugh Case. We believe that the Board has correctly held that in such sales of interests in oil leases a money payment unconnected with production of oil is to be dealt with as representing a conversion of capital by sale, but that "oil payments" where no personal obligation is assumed by the purchaser are to have the benefit of the statutory depletion allowance.

The petitions for review are therefore denied.

FOSTER, Circuit Judge (dissenting).

I agree with the conclusion of the majority of the court as to the allowance of a deduction for depletion on the income received by the taxpayer out of the proceeds of oil produced from the lease. However, I think we should go further and allow a deduction for depletion on the cash payment, not dependent on the production of oil, since the taxpayer retained an economic interest in the oil in place. Palmer v. Bender, 287 U. S. 551, 53 S.Ct. 225, 77 L.Ed. 489. I therefore respectfully dissent.