## ELBE OIL LAND DEVELOPMENT CO. v. COMMISSIONER OF INTERNAL REVENUE.

No. 8358.

Circuit Court of Appeals, Ninth Circuit.

June 21, 1937.

George T. Altman, of Los Angeles, Cal., for petitioner.

Robert H. Jackson, Asst. U. S. Atty. Gen., and Sewall Key, Norman D. Keller, Ellis N. Slack, and Lester L. Gibson, Sp. Assts. to the Atty. Gen., for respondent.

Before WILBUR, GARRECHT, and HANEY, Circuit Judges.

WILBUR, Circuit Judge.

In each of the taxable years 1928 and 1929 the petitioner received the sum of $400,000, being payments under an agreement with the Honolulu Consolidated Oil Company (hereinafter called the Honolulu Company) with reference to the transfer of a large area of oil lands, the exact nature and effect of this agreement being the subject of this controversy.

The petitioner claims that it is entitled to a depletion allowance of 27½ per cent. from each of these two payments by reason of the fact that it had retained an economic interest in the oil in the lands in question, while the Commissioner contends that these two items represent payments of the purchase price of the sale of the lands and, consequently, that no depletion allowance was permissible under the statute, particularly in view of the fact that a previous payment made in 1927 of $350,000 more than covered the cost of the property to the petitioner and that the cost had been allow-

ed. as deduction in estimating its taxable gain derived from the payment.

The Board of Tax Appeals was largely influenced in its decision that the transaction constituted a sale by the fact that the agreement between the petitioner and the Honolulu Company expressly provided that all the right, title and interest of the petitioner in the leases and permits upon the government land in question was conveyed to and vested in the Honolulu Company. Petitioner, however, contends that, on consideration of the entire agreement, its scope and effect, it will appear that it had retained an economic interest in the oil and was therefore entitled to a depletion allowance from the cash payments received by it. The instrument under which the two payments were made may be briefly summarized as follows:

By the terms of the agreement an initial payment of $350,000 was made in 1927. This was to be followed in the years 1928 and 1929 by payments of $400,000 on the 14th day of March of each year. The Honolulu Company was to take possession of the property and drill for oil, as required by the various leases and permits which were assigned to it by the petitioner. It reserved the right, however, to surrender the property without making the payment of 1928, or, after that payment, before making the payment of 1929, if it so desired. However, in the event of such surrender or reconveyance as it is styled in the instrument in question, the Honolulu Company retained the right to the possession of all oil wells which had been completed or were in the process of drilling until such time as it had been reimbursed for all its expenditures and all payments it had made to the petitioner. If the Honolulu Company did not surrender the property before the 14th of March, 1929, it agreed to continue payments aggregating in all $2,000,-000. After its payments were completed no further sums were to be paid to the petitioner until the Honolulu Company had been reimbursed for all payments and expenditures it had incurred in connection with the property, including the $2,000,000 paid, and thereafter the petitioner was to receive one-third of all oil produced. It is difficult to distinguish the situation thus presented from the case of an ordinary lease providing for bonus payments and royalties so frequently dealt with in the decisions involving the right to a depletion allowance for income tax purposes.

It is apparent that the whole contract was based upon the value of the oil content of the land. The payments made to the petitioner in 1928–1929 were optional with the Honolulu Company which, prior to that time, was in possession of the property and developing its oil resources. In the event the land proved valueless there was no obligation on the part of the Honolulu Company to pay $400,000. If payment was made it is clear that it was only because of the belief that development of the oil resources of the land justified such payment. Here it should be added that the agreement in question provided that the Honolulu Company could surrender any of the leases or leased land covered by the contract after notice to the petitioner and without incurring any liability because of such surrender.

The decision of the Supreme Court in Palmer v. Bender, 287 U.S. 551, 53 S.Ct. 225, 226, 77 L.Ed. 489, dealt with a somewhat similar situation. There the owner of certain oil leases transferred the leased property in consideration of a cash bonus and the future payment to be made out of the oil produced to the extent of $1,000,000, plus a royalty of one-eighth of all the oil produced and saved. The instrument purported to be a sale. The Commissioner refused to permit a depletion allowance to the seller, upon the theory that the transaction was a sale and that the purchaser must take his capital return by deduction of the cost from the sale price. The contention was made that under the law of Louisiana the so-called sale was in legal effect an assignment or sublease. The court, however, took the broad view that this was entirely immaterial. The question of whether or not depletion allowance should be given was to be determined by the Revenue Act. We quote from the opinion in that regard as follows:

"Nothing in section 214(a) (10) [concerning depletion allowance] indicates that its application is to be controlled or varied by any particular characterization by local law of the interests to which it is to be applied. See Burnet v. Harmel, 287 U.S. 103, 53 S.Ct. 74, 77 L.Ed. 199. We look to the statute itself and to the decisions construing it to ascertain to what interests it is to be applied, and then to the particular interests secured to the two partnerships [who had transferred their oil leases] by the instruments in question to ascertain whether they come within the statutory

provision. The formal attributes of those instruments or the descriptive terminology which may be applied to them in the local law are both irrelevant. * * *

"Similarly, the lessor's right to a depletion allowance does not depend upon his retention of ownership or any other particular form of legal interest in the mineral content of the land. It is enough if by virtue of the leasing transaction he has retained a right to share in the oil produced. If so, he has an economic interest in the oil, in place, which is depleted by production. * * *

"When the two lessees transferred their operating rights to the two oil companies, whether they became technical sublessors or not, they retained, by their stipulations for royalties, an economic interest in the oil, in place, identical with that of a lessor. * * * The loss or destruction of the oil at any time from the date of the leases until complete extraction would have resulted in loss to the partnerships. Such an interest is, we think, included within the meaning and purpose of the statute permitting deduction in the case of oil and gas wells of a reasonable allowance for depletion according to the peculiar conditions in each case."

The respondent strongly relies upon our decision in Commissioner v. Elliott Petroleum Corporation, 82 F.(2d) 193, decided March 9, 1936, and upon a decision of the Circuit Court of Appeals for the Fifth Circuit, Comm'r v. Fleming, 82 F.(2d) 324, 325, decided March 7, 1936.

In the case before us (Comm'r v. Elliott Petroleum Corporation, supra) the question at issue was whether or not in the sale of an oil lease for cash and for a fixed balance payable out of the net proceeds of oil production from the lease sold the taxpayer (vendor) was entitled to a depletion allowance upon the payments to it derived from the oil produced from the land where it had already been permitted to deduct the entire cost for the land from the cash payment theretofore made in estimating the taxable income. We sustained the holding of the Board of Tax Appeals that the vendor had an economic interest in the oil in place which entitled it to a share in the depletion allowance. We expressly refrained from passing upon the question of whether or not the Commissioner had properly allowed the entire cost of the property as a deduction from the cash payment in estimating the taxable income therefrom,

deciding only that so far as the payments derived from the oil were concerned there was a right of depletion where the payment was contingent upon the recovery of sufficient oil to pay the amount due. We thus reserved the very question which is involved in the case at bar, namely, the amount and character of the deduction allowable from the cash payments in such a transaction.

In Comm'r v. Fleming, supra, a similar question was presented. The cash payment was $1,000,000, and a second million was to be paid from the proceeds of the oil derived from the premises. It was held by a majority of the court that the seller of the land was not entitled to a depletion deduction from the $1,000,000 in cash which he had received, but that he was entitled to a deduction from the payments derived from "one-fourth of all oil, gas and other minerals produced," etc. Circuit Judge Foster dissented upon the ground that, under the decision of the Supreme Court in Palmer v. Bender, supra, there should also be a deduction for depletion on cash payment "since the taxpayer retained an economic interest in the oil in place." The opinion of the majority in that case called attention to the fact that in Texas "oil and gas in the ground are capable of ownership and sale separate from the soil which contains them, and leases such as are here involved conveyed to the lessee title to the oil and gas." The court said: "While the contract was phrased as though the lease and all the oil were sold, and as though the proceeds were to be paid back to the seller, the real essence of the transaction was that the lease was sold and all the oil except that whose proceeds were to come to the selling taxpayer. * * * The thing sold for the cash consideration was the lease and all the oil except that so reserved."

Under the law of Texas, as the court states, oil in place can be sold. While the court expressly declared that the law of Texas was not controlling, the idea of a sale of the land and three-fourths of the oil content, and a reservation of one-fourth of the oil content (up to $1,000,000), was the determining factor in the decision that the $1,000,000 paid outright as consideration for the sale was to have no depletion allowance, only a deduction for cost, and that the money payable only from the oil produced should have a depletion allowance of 27½ per cent.

If the case at bar cannot be distinguished from the decision of the Fifth Circuit Court of Appeals in Commissioner v. Fleming, supra, because of the fact that the two $400,000 payments involved here were to be optional with the purchaser, and thus were obviously dependent upon the result of exploratory operations for oil, and because of the fact that the vendee had the right to surrender the premises at any time before the payment of the second $400,000, as the Commissioner contends it can be distinguished, we must then decline to follow that decision. In the case at bar it is entirely clear that no matter what language we use in describing the nature of the transaction between the petitioner and the Honolulu Company, the petitioner had at all times an economic interest in the oil produced from the leased premises and was therefore entitled to a depletion allowance upon the cash paid as well as the oil produced. It was in effect a guarantee of future oil production and made because of such anticipated production, and upon an express agreement that the Honolulu Company was to be reimbursed therefrom before the taxpayer received its royalty payments. It was entitled to a depletion allowance under the Revenue Act of 1928, § 114(b) (3), 26 U.S.C.A. § 114 note. Herring v. Commissioner, 293 U.S. 322, 55 S. Ct. 179, 79 L.Ed. 389.

Reversed.

HANEY, Circuit Judge (concurring).

I concur in the holding that depletion deduction must be here allowed, solely on the ground that, although Palmer v. Bender, 287 U.S. 551, 53 S.Ct. 225, 77 L.Ed. 489, is distinguishable on its facts, the language used therein is general enough to embrace the facts herein.

GARRECHT, Circuit Judge (dissenting).

The majority of the court in reversing the order of the Board of Tax Appeals rely upon the decision of the Supreme Court in Palmer v. Bender, 287 U.S. 551, 53 S. Ct. 225, 77 L.Ed. 489.

In that case the taxpayer very definitely had an economic interest in the oil and taxes were assessed on payments made from oil produced, but here the payments taxed were made in cash and were not dependent upon the production of oil.

The gross income from the property which is subject to the depletion allowance is the gross income from the oil and gas produced. Helvering v. Twin Bell Syndicate, 293 U.S. 312, 55 S.Ct. 174, 79 L.Ed. 383. Here the payments subjected to the tax did not depend upon production but were payable in any event. Commissioner of Internal Revenue v. Fleming (C.C.A.) 82 F.(2d) 324.

The order of the Board of Tax Appeals should be sustained.