Mortimer A. KLINE, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

GORDON OIL COMPANY, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 16150.

United States Court of Appeals
Ninth Circuit.

July 2, 1959.

J. W. Bullion, Dallas, Tex., for appellant.

Charles K. Rice, Asst. Atty. Gen., Davis W. Morton, Jr., Harry Baum, Lee A. Jackson, Attorneys, Department of Justice, Washington, D. C., for respondent.

Before STEPHENS, MARIS and CHAMBERS, Circuit Judges.

MARIS, Circuit Judge.

These are petitions by Gordon Oil Company, a California corporation, and Mortimer A. Kline to review decisions of the Tax Court. We consolidated the petitions for hearing and decision. The Tax Court upheld determinations by the respondent that Gordon Oil Company owed deficiencies in income and excess profits taxes for the period January 1, 1951 to August 31, 1951 in the amount of $46,-256.88 and that Kline, as the transferee of the assets of Gordon Oil Company, was liable for such deficiencies. The controversy arises out of the following facts, which are not in dispute.

Gordon Oil Company on March 22, 1949 acquired two undeveloped oil and gas leases in the Placerita Field in Los Angeles County, California. Thereafter the company drilled and equipped 29 producing wells on the leaseholds. Between March and May 1951 Kline purchased for his own account all of the outstanding stock of Gordon Oil Company for $3,962,-432.54. He financed the purchase by a loan from the First National Bank in Dallas, Texas, and pledged all the stock as collateral security for the loan. After the purchase Kline took control of Gordon Oil Company and became a director and president of the company.

Kline then proceeded to conduct negotiations on behalf of Gordon Oil Company with Tevis F. Morrow and A. H. Meadows looking toward a sale of the assets of the company. As a result of these negotiations Gordon Oil Company, as principal, by appropriate corporate action, executed under date of May 7, 1951 an agreement with Morrow and Meadows upon the execution of which there was paid to the company the sum of $250,000 in cash. The agreement, for the consideration of the cash thus paid, conveyed to Morrow and Meadows all of the company's rights in and under its oil and gas leases in the Placerita Field, all of the physical equipment in and on the leases and all its other tangible assets except its cash and accounts receivable. Under the agreement Gordon Oil Company specifically excepted from the conveyance and reserved unto itself and its assigns a limited overriding royalty interest or production payment, free of all development, operation, production and other costs, in an undivided 85% of the working interest in the leases which it was thereby conveying to Morrow and Meadows, which exception and reservation was to terminate when the company should have received out of the net proceeds of the sale of the reserved share of oil and gas the sum of $3,600,000, plus taxes and interest from May 1, 1951. The pertinent provisions of the agreement are set out in the findings of the Tax Court, 29 T.C. 1111–1116, and need not be repeated here. The Tax Court found that the production payment thus reserved would be liquidated in full substantially prior to the exhaustion of the economic life of the two leases and that it was, therefore, not tantamount to an ordinary overriding royalty.

At the time of the conveyance by Gordon Oil Company to Morrow and Meadows, the company had fully depleted its leasehold cost in both of the leases and had on hand tangible assets which were included in the conveyance which had a then adjusted cost basis to the company of $332,518.70.

Neither Morrow nor Meadows at any time ever had any connection with Gordon Oil Company. The agreement between Gordon Oil Company and Morrow and Meadows was negotiated by Kline and the consideration of $250,000 was agreed upon as a result of such negotiations. Kline testified that it represented the fair market value of the working interest in the two leases, less the reserved production payment, and the tangible property conveyed.

Following the conveyance to Morrow and Meadows, Gordon Oil Company was dissolved and all of its assets and property then on hand, including the reserved production payment, were distributed in complete liquidation of the company to Kline in cancellation and redemption of all of its outstanding stock. After the dissolution and liquidation of Gordon Oil Company, Kline, as principal, sold the reserved production payment which he had received in the liquidation for $3,600,000 to a purchaser with whom he had never had any prior connection. After the sale Kline paid off his indebtedness to the First National Bank in Dallas.

As a result of the transactions with Morrow and Meadows, Gordon Oil Company claimed in its income tax return for the period January 1 to August 31, 1951, a loss deduction of $82,518.70 representing the difference between the adjusted basis of the property conveyed to Morrow and Meadows amounting to $332,518.70 and the cash payment of $250,000 received therefor. The respondent disallowed the deduction and the Tax Court sustained the disallowance. 29 T.C. 1110.

The Tax Court appears to have taken the view that the total consideration received by Gordon Oil Company for the conveyance of its working interest in the leases and the tangible property located thereon was $3,850,000, of which $250,000 was represented by the cash payment and $3,600,000 by the reserved production payment. At least it indicated in its opinion that it did not regard the cash payment of $250,000 as the total purchase price upon which to compute

Gordon Oil Company's gain or loss. The court did not, however, suggest that the reserved production payment of $3,600,000 was to be regarded as taxable income and it appears to have assumed that the petitioners were basing their claim upon the theory that a loss had been suffered upon the sale of the tangible property considered separately. We think it is clear that the facts are not susceptible to these conclusions.

It would not be correct to hold that the production payment of $3,600,000 constituted part of the purchase price paid by Morrow and Meadows to Gordon Oil Company for the conveyance by the agreement of May 7, 1951 of the working interest in the leases and the tangible property thereon. For the 85% share of the working interest from the proceeds of which this sum was to be realized was expressly excepted from the conveyance by and reserved to Gordon Oil Company. The company never parted with this interest and it, accordingly, has no bearing upon the problem of the amount of the gain or loss derived by the company from the sale of what it actually did sell and convey to Morrow and Meadows. See Palmer v. Bender, 1933, 287 U.S. 551, 53 S.Ct. 225, 77 L.Ed. 489; Thomas v. Perkins, 1937, 301 U.S. 655; Commissioner of Internal Revenue v. Fleming, 5. Cir., 1936, 82 F.2d 324; Columbia Oil &. Gas Co. v. Commissioner of Internal Rev., 5 Cir., 1941, 118 F.2d 459.

It is clear that the adjusted basis for determining gain or loss of all the property sold by Gordon Oil Company to Morrow and Meadows was $332,518.70. Since Gordon Oil Company's leases had been fully depleted, this figure represented the basis of the leaseholds and tangible property combined, and not merely of the tangible property alone, as the Tax Court assumed. Since the total consideration received by Gordon Oil Company upon the sale was $250,000 it becomes clear that the company suffered on the transaction the loss of $82,518.70 which it claimed.

The respondent argues that Gordon Oil Company received consideration for the

property conveyed in addition to the sum of $250,000 in cash. He contends that the reserved production payment and the rights and privileges attributable thereto which are provided for in the agreement were also such consideration. We have already pointed out, however, that the production payment was not given to the company by Morrow and Meadows but was reserved by the company out of the greater interest which it already owned. The so-called visitorial privileges, rights of inspection, and other covenants contained in the agreement between Gordon Oil Company and Morrow and Meadows related to and were attributable only to the reserved production payment and form no part of the consideration for the property which Morrow and Meadows received by conveyance from the company. We conclude that the Tax Court erred in denying to the petitioners the benefit of the loss deduction which they claim.

The decisions of the Tax Court will be reversed and the causes will be remanded with directions to enter decisions in favor of the petitioners.