**UNITED STATES of America,**
Appellant,

v.

**J. A. MORGAN and Myra S. Morgan,**
Appellees.

**No. 19840.**

United States Court of Appeals
Fifth Circuit.

Aug. 9, 1963.

Lee A. Jackson, Atty., Dept. of Justice, Washington, D. C., Robert E. Hauberg, U. S. Atty., E. R. Holmes, Jr., Asst. U. S. Atty., Jackson, Miss., Louis F. Oberdorfer, Asst Atty. Gen., Meyer Rothwacks, Melva M. Graney, Robert L. Waters, Attys., Dept. of Justice, Washington, D. C., for appellant.

William E. Logan, Gulfport, Miss., Stanford E. Morse, Gulfport, Miss., W. E. Logan, Jr., Lafayette, La., for appellees.

Before RIVES and CAMERON, Circuit Judges, and BOOTLE, District Judge.

BOOTLE, District Judge.

J. A. Morgan, on December 23, 1953, obtained an oil and gas lease from Cora Suggs, et al., paying therefor Six Thousand ($6,000.00) Dollars. On July 24, 1954, for a cash consideration of Seventy-One Thousand Four Hundred ($71,400.00) Dollars, he did "sell, set over, transfer, assign and specially warrant unto E. A. Vaughey" the lease, and Vaughey the same day executed an assignment to Morgan of "one-sixteenth of * * * all oil, gas and other mineral as, if and when produced, saved and marketed * * until the said assignee (J. A. Morgan) herein * * * receives the sum of Ten Million and No/100 Dollars ($10,000,000.00) * * *." Under certain conditions "the fractional interest out of which said oil payment is to be made" was to be increased to one eighth, and said increase was later effectuated by all interested parties. The assignment or transfer provides that "there shall be no personal obligation on the part of the assignor (Vaughey) herein * * * for said sum ($10,000,000.00) or any part thereof."

On his 1954 income tax return, J. A. Morgan, hereinafter referred to as taxpayer,[1] treated the cash payment ($71,400.00, less the cost of the lease to him $6,000.00) as long-term capital gain. The Commissioner of Internal Revenue determined that the payment constituted ordinary income subject to depletion. Taxpayer paid the consequent deficiency plus interest and thereupon filed suit for refund under 28 U.S.C.A. § 1346(a) (1).

Taxpayer filed a motion and defendant a cross motion for summary judgment. In considering these motions, the district court had before it (1) the pleadings, (2) the taxpayer's claim for refund, which stated, among other things, that at the time of the alleged sale of the lease by him to Vaughey the nearest production to any land described in the lease was two miles away, and that the lease was "wild cat" until Vaughey drilled thereon months after the sale and encountered oil sands; that because taxpayer was strained financially, the large cash offer was the moving and controlling factor in the trade; that subsequent to the alleged sale the lease was drilled and production was encountered in several sands, and there are yet deeper sands to be tested in later years; that, therefore, it is not reasonable to say that the assigned oil payment will last for the life of the lease; that there are many things that can affect the time of pay-out from known production, and that had such an oil payment been carved out of the lease after it was in production, the position of the revenue agent might have been sound, but there was no reasonable basis

1. J. A. Morgan alone will be referred to as the taxpayer inasmuch as all of the facts involved him individually, his wife, Myra S. Morgan, being involved solely by reason of the filing of a joint income tax return.

for such conclusion as to a "wild cat" lease such as this where the substantial cash payment *per se* shows the intent of the vendor, (3) an affidavit by taxpayer setting forth generally his contentions, (4) the lease from Suggs to taxpayer, (5) the assignment or transfer of the lease by taxpayer to Vaughey, (6) assignment of alleged oil payment by Vaughey to taxpayer, (7) defendant's request for admission in which defendant requested taxpayer to "admit that at the time the oil payment of $10,000,000. was reserved by J. A. Morgan upon the assignment of an oil and gas lease to E. A. Vaughey that it was reasonable to assume that said oil payment could not be fully paid throughout the life of the lease," (8) taxpayer's response to said request for admission, as follows: "Plaintiffs * * * cannot truthfully admit or deny the matters of which an admission is requested by defendant because not a relevant matter as set out in affidavit of J. A. Morgan attached hereto", and said affidavit as follows: "Plaintiff, J. A. Morgan, states under oath that he cannot truthfully admit or deny whether or not it was reasonable to assume that at the time the oil payment of $10,000,000. was reserved to him that said oil payment could not be fully paid throughout the life of the lease for the reason that such an expression is a matter of opinion, and at best only a guess. Affiant is not qualified to express an opinion in this matter nor is anyone else qualified to do so," (9) affidavit of Gordon K. Smith, a petroleum engineer, to the effect that, based upon the facts known about the field in question, on July 24, 1954, it was his opinion "that the likelihood of the oil payment of $10,000,000. reserved by J. A. Morgan on the alleged assignment of a mineral base (sic) to E. A. Vaughey being completely paid out of one-eighth of production, was remote" and that in his opinion "a reasonable man would not expect that said oil payment would pay out prior to the termination of the base (sic) when the minerals are exhausted," and (10) an affidavit of counsel for defendant as follows: "Should the Court deny the motion to dismiss [2] filed by the defendant, we submit that an important question of fact remains in this case which has not been resolved by the pleadings nor the affidavit submitted by the plaintiffs in this action. The defendant is prepared to offer testimony at the time set for the hearing on the motion for summary judgment proving that the oil payment reserved by plaintiff J. A. Morgan upon the alleged assignment of a mineral lease to one E. A. Vaughey could not possible (sic) be expected to survive the extraction of the mineral from the land covered by the lease".

The district court overruled all of defendant's motions, granted taxpayer's motion for summary judgment and entered judgment accordingly. This appeal questions the correctness of the grant of that summary judgment.

This tax controversy relates only to the cash payment of the $71,400.00 received by taxpayer for his lease assignment or transfer. It relates to the nature of that item of income, whether it should be treated as ordinary income subject to depletion or as long-term capital gain. But the answer to that question turns upon the type of interest which taxpayer retained under his lease assignment or transfer. If taxpayer's reservation under his lease assignment or transfer was a royalty, then the cash payment is to be regarded as an advance royalty and taxed as ordinary income subject to depletion rather than capital gain; on the other hand, if taxpayer's reservation is a production payment, more commonly called an oil payment, then the cash payment is to be regarded as representing a conversion of capital by sale and taxed

2. After the filing of taxpayer's response to defendant's request for admission, defendant filed its motion to dismiss the complaint for failure to state a cause of action, urging that taxpayer had the burden of proving that the oil payment reserved by him "could reasonably be expected to survive the full term of the lease" and that by said response taxpayer had admitted he could not sustain that burden.

as long-term capital gain. The foregoing principles have been established by a few leading cases. In Palmer v. Bender, 287 U.S. 551, 53 S.Ct. 225, 77 L.Ed. 489 (1933), the Court was confronted with the question whether a taxpayer who, after acquiring oil and gas leases, executed writings in which he did "sell, assign, set over, transfer and deliver" unto another the described leased premises, thereby conferring upon such other person the right to take over the leased property on which a producing well was located, subject to the obligations of the covenants of the leases, in consideration of a present payment of a cash bonus, a future payment to be made out of one-half of the first oil produced and saved to the extent of a named sum, and an additional "excess royalty" of one-eighth of the oil produced and saved was entitled to a depletion allowance with respect to his income derived from the bonus payment and oil received under his contract with such other person. The government contended that taxpayer had assigned or sold his leases and hence was not entitled to any depletion allowance; taxpayer contended that the instruments he executed were not assignments but only subleases. The Court said "[w]e do not think the distinction material." 287 U.S. 551, 555, 53 S.Ct. 225, 226, 77 L.Ed. 489. It referred to its earlier holding in Lynch v. Alworth-Stephens Co., 267 U.S. 364, 45 S.Ct. 274, 69 L.Ed. 660 (1925), to the effect that the allowance for depletion is not made dependent upon the particular legal form of the taxpayer's interest in the property to be depleted and that, regardless of the fact that the leases thereunder consideration did not convey title to the unextracted mineral deposits, they did confer upon the lessee taxpayer the exclusive possession of the deposits and the valuable right of removing and reducing the ore to ownership, thereby creating "a very real and substantial interest therein", and that the lessee taxpayer was entitled to a depletion allowance. In Palmer the shoe was on the other foot and the question was whether the lessor or transferor taxpayer was simi-

larly entitled to depletion and the Court, coining the phrase "economic interest", held that a taxpayer has an economic interest in every case in which he has "acquired, by investment, any interest in the oil in place, and secures, by any form of legal relationship, income derived from the extraction of the oil, to which he must look for a return of his capital", and that the lessor or transferor taxpayer, having by the leasing transaction retained a right to share in the oil produced, had an economic interest in the oil in place which is depleted by production and that both the cash received at the time of the leasing transaction and the royalties are taxable as ordinary income subject to depletion.

Following Palmer, this Court has consistently held that amounts received upon the transfer of a lease, where the original lessee retains an overriding royalty, are taxable as ordinary income subject to depletion. Thus, in Hogan v. Commissioner, 141 F.2d 92, 94 (5th Cir., 1944), it was said "[w]hen the owner and operator of a producing oil and gas lease assigns and transfers it for cash and the payment of an overriding royalty, he retains an economic interest in the oil and gas in place which will be depleted by production. The cash bonus received by him is treated as advance royalty with the same tax incidence." To the same effect, see Cullen v. Commissioner, 118 F.2d 651 (5th Cir., 1941); McLean v. Commissioner, 120 F.2d 942 (5th Cir., 1941). See also Gray v. Commissioner, 183 F.2d 329 (5th Cir., 1950).

A retained production payment or oil payment is also an "economic interest". Thomas v. Perkins, 301 U.S. 655, 57 S. Ct. 911, 81 L.Ed. 1324 (1937); Lee v. Commissioner, 126 F.2d 825 (5th Cir., 1942). See also Anderson v. Helve- ing, 310 U.S. 404, 409–411, 60 S.Ct. 952, 84 L.Ed. 1277 (1940) explaining Thomas v. Perkins, supra. Yet, despite that striking similarity between oil payments and oil royalties, a clear distinction has been made in respect of the manner in which a cash payment is taxed when the lease assignment or transfer is for cash plus

(1) a retained royalty interest or (2) a retained oil payment. As we have already seen, if there is a cash payment plus a retained royalty, both the cash payment and income from the retained royalty are taxed as ordinary income subject to depletion, Hogan v. Commissioner, 5 Cir., 141 F.2d 92. But it has been held that when only a production payment as distinguished from a royalty is retained, any cash payment received along with it is to be treated as arising from a sale, that such a transaction is a sale except for that part of the production necessary to satisfy the production payment. Commissioner v. Fleming, 82 F.2d 324 (5th Cir., 1936); Hammonds v. Commissioner, 106 F.2d 420, 425 (10th Cir., 1939). See also United States v. Witte, 306 F.2d 81 (5th Cir., 1962). In such transactions the cash received is attributed to the portion of the lease sold and may be productive of long-term capital gain if all other requirements are met. See GCM 22730, 1941–1 Cum.Bull. 214, 217–218. Thus, under the foregoing authorities, a cash payment received on the assignment or transfer of a mineral lease is to be taxed as ordinary income subject to depletion if the assignor retains a royalty interest, but is to be taxed as capital gain if the assignor retains an oil payment and no royalty interest.

Taxpayer here places his reliance upon Commissioner v. Fleming, 5 Cir., 82 F.2d 324, insisting that he retained no royalty interest, only an oil payment. The ultimate question in this case, therefore, is did he retain an oil payment or a royalty interest.

In Anderson v. Helvering, 310 U.S. 404, 409, 410, 60 S.Ct. 952, 954, 955, 84 L.Ed. 1277, a royalty interest was defined as "a right to receive a specified percentage of *all* oil and gas produced during the term of the lease", (Emphasis added) meaning during the "entire" term of the lease and not limited to a specified sum of money, (Commissioner v. P. G. Lake, Inc., 356 U.S. 260, 262, n. 1., 78 S.Ct. 691, 692–693, 2 L.Ed.2d 743 (1958)), and the right to oil payments was defined as "the right to a specified sum of money, payable out of a specified percentage of the oil, or the proceeds received from the sale of such oil, if, as and when produced."

The language used in taxpayer's transfer or assignment clearly purports to reserve only an oil payment and not a royalty. If the Commissioner is bound by the language used in the writings, the result reached in the district court is correct. The Commissioner contends, however, that the total dollar limitation (necessary to fix a "specified sum") is unrealistic and fictitious for the reason that it was placed so high ($10,000,000.00) that the payments will continue for the entire term of the lease or productive life of the field, thereby causing the retention in substance and reality to constitute a royalty.

The district court, looking to the formal language of the writings said: "Those payments are not in any sense royalties but are in truth and in fact oil payments. Those payments are to be made from a particular source if, as and when produced and until a given amount is realized." The grant of a summary judgment for taxpayer had the effect of holding that the defendant should not be afforded an opportunity to support by evidence on the hearing of the motion or at trial its contention that in the light of the economic and geologic facts existent on the date of taxpayer's assignment or transfer the alleged oil payment reserved could not possibly be expected to survive the extraction of the mineral from the land covered by the lease and to prove by expert testimony that based upon facts known about the field in question on the date in question the likelihood of the alleged oil payments being completely paid out of one-eighth of production was remote and that a reasonable man would not expect that said oil payment would pay out prior to the termination of the lease when the minerals are exhausted.

"The purpose of § 117 (of the Internal Revenue Code of 1939, pertaining to taxation of capital gains) was 'to relieve the taxpayer from * * * excessive tax burdens on

gains resulting from a conversion of capital investments, and to remove the deterrent effect of those burdens on such conversions.' (citation omitted). And this exception has always been narrowly construed so as to protect the revenue against artful devices." Commissioner v. P. G. Lake, Inc., 356 U.S. 260, 265, 78 S.Ct. 691, 694, 2 L.Ed.2d 743.

As was stated by this Court in United States v. Wheeler, 311 F.2d 60, 63 (5th Cir., 1962), "the real question is what was the substance as distinguished from the legal form of the transaction", and in Weinert's Estate v. Commissioner, 294 F.2d 750, 755 (5th Cir., 1961), this Court said "the principle of looking through form to substance * * * is the cornerstone of sound taxation, especially of oil and gas transactions which do not fit snugly into common law conveyancing forms. '[T]ax law deals in economic realities, not legal abstractions * * *.' Commissioner of Internal Revenue v. Southwest Exploration Co., 1956, 350 U.S. 308, 315, 76 S.Ct. 395, 399, 100 L.Ed. 347. Discussing oil payment assignments in its important decision in Lake the Supreme Court said: 'these arrangements seem to us transparent devices. Their forms do not control. Their essence is determined not by subtleties of draftsmanship but by their total effect.' [356 U.S. 260 (266, 267), 78 S.Ct. 695 (2 L.Ed.2d 743).]"

■ Of course, we do not hold that the limitation of $10,000,000.00 in this writing was unreasonable, unrealistic or fictitious. That question must await proper determination in the district court. We do hold, however, that the order granting taxpayer's motion for summary judgment was improvidently

granted for the reason that taxpayer failed to show that there was no genuine issue as to any material fact and that he was entitled to a judgment as a matter of law. On the contrary, the defendant showed that there were genuine issues as to material facts and those issues of fact, in our judgment, are as follows: (1) could ordinarily prudent persons dealing in mineral lands or mineral leases, with knowledge of all facts then generally known or ascertainable upon reasonable inquiry pertaining to the lands and lease here involved, have reasonably expected, on or about July 24, 1954, that the alleged oil payment then reserved by taxpayer upon the alleged assignment by him of the mineral lease to E. A. Vaughey, would be paid out before the expiration of the lease and (2) did J. A. Morgan then so expect? We think that if both of those questions be answered in the affirmative, taxpayer's reservation was an oil payment, but that if either of those questions be answered in the negative, taxpayer's reservation was a royalty and not an oil payment. In resolving those factual issues, facts among others to be considered are all economic and geologic facts pertaining to the oil reserve and lease involved including the fact that the oil reserve in the 357 acres subject to the lease would have to produce in excess of $80,000,000.00 worth of oil and gas in order for the alleged oil payment to be paid out before the expiration of the lease.

While we know of no cases holding as we do here that what formally and ostensibly is a production payment may in fact be a royalty, textual commentary indicates that substantial consideration has been given to this question.[3]

3. "A production payment, for federal tax purposes, is a right to oil and gas in place that entitles its owner to a specified fraction of production for a limited time, or until a specified sum of money (which may be determined by a formula) or a specified number of units of oil or gas has been received. A production payment, or, as it is more commonly called, a gas payment or an oil payment, is

somewhat like an overriding royalty, but, because it is definitely limited in amount and expires when this amount has been paid, different tax consequences attend its creation and disposition (as explained in Chapter 6). Argument has been advanced that an oil payment should not be for an amount so large that it evidently will never pay out, for it may then be treated as an overriding royalty. From

■ The defendant now concedes that its motion for summary judgment was properly denied. For reasons above stated, taxpayer's similar motion should also have been denied. We are not called upon to say whether or not taxpayer could possibly have made a sufficient showing or can yet make a sufficient showing to entitle him to a summary judgment. We do say that he made no such showing according to the record before us and that should he be advised upon remand to renew his motion in the district court, he would not be entitled to prevail thereon unless his moving papers make it quite clear what the truth is, remembering that the burden of demonstrating clearly that there is no genuine issue of fact is upon him as movant, and remembering further that any doubt as to the existence of such an issue is to be resolved against him. Heyward v. Public Housing Administration, 238 F.2d 689, 696 (5th Cir., 1956); see also Murphy v. Light, 257 F.2d 323, 326 (5th Cir., 1958).

Accordingly, the judgment below is reversed and the case remanded to the district court for further proceedings not inconsistent with this opinion.

a theoretical standpoint, this argument sounds impressive, but it must be remembered that the tax cases making distinctions between oil payments and overriding royalties were construing instruments involving assignments of nonproducing properties where by definition no certainty of payment existed. In any event, the Internal Revenue Service has acknowledged in private rulings that the possible classification of an oil payment as an overriding royalty because its life may be coextensive with the life of the property out of which it is payable can be successfully avoided by putting a 'floor' on the oil payment which would make it impossible for the economic interest to extend over the life of the property. For example, if the assignment creating the oil payment provided that the interest would be extinguished when the estimated economically recoverable reserves were reduced to a specified reasonable amount, the term of the oil payment would not be coextensive with the life of the property. Although most of the cases involve oil payments reserved upon the assignment of a lease, such payments may nevertheless be carved out of any larger interest." Breeding & Burton, Income Taxation of Oil and Gas Production, § 2.07 (1961).

"In a sale transaction, the oil-payment interest has merely been reserved from the interest conveyed and hence does not affect the capital-gain nature of the deal.

However, if the reserved oil payment is so large that, under the facts known at the time, it appeared certain it could not pay out, it would be considered a royalty interest. As a result the deal will be converted from a sale into a leasing transaction.[20] In a leasing transaction, the reservation of the oil payment does not alter the ordinary-income result thereof. In either case (sale or lease), the income accruing to the oil payment (which is an economic interest) is taxable to the holder thereof and is not includible in the income of the assignee of the property.

"[20]. This is a well known administrative practice and is based on the doctrine that substance, not form, controls." Appleman, Assignment of Mineral Interests and the Incidence of Income, NYU 18th Inst. Fed.Tax. 507, 512 (1960).

"An analogous problem has been created by the federal income tax cases which have determined that the transfer of a lessee's interest for cash and a production payment will be treated as a sale of a capital asset but that the transfer of a lessee's interest for cash and royalty reserved will be treated as a sublease. The Internal Revenue Service has indicated that a production payment for purposes of this distinction means an interest that does not extend throughout the life of the lease." Note, 35 Tex.L. Rev. 459, 461 (1957).