## McLEAN v. COMMISSIONER OF INTERNAL REVENUE.

### No. 9870.

Circuit Court of Appeals, Fifth Circuit.

June 20, 1941.

L. J. Benckenstein, of Beaumont, Tex., for petitioner.

Warren F. Wattles and Sewall Key, Sp. Assts. to the Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., and J. P. Wenchel, Chief Counsel, Bureau of Internal Revenue, and John M. Morawski, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondent.

W. D. Gordon, of Beaumont, Tex., amicus curiae.

Before FOSTER, HUTCHESON, and HOLMES, Circuit Judges.

HUTCHESON, Circuit Judge.

The Board treated the transaction by which the taxpayer let Yount-Lee Oil Company into the operation and enjoyment of the Cade leases in Galveston County, Texas, as ruled by Palmer v. Bender, 287 U.S. 551, 53 S.Ct. 225, 77 L.Ed. 489; and Burnet v. Harmel, 287 U.S. 103, 53 S.Ct.

74, 77 L.Ed. 199. It held [1] that the taxpayer had derived therefrom, in cash and from oil payments in the tax years in question, were ordinary income from the property, and not, as claimed by the taxpayer, "gain from the sale or exchange of capital assets." The taxpayer is here insisting that the transaction was a sale of mineral interests within Sec. 101, Revenue Acts of 1928–29, and Sec. 117, Revenue Act of 1934, 26 U.S.C.A. Int.Rev.Code, § 117, and both the cash and the payments in oil were gains from the sale or exchange of capital assets; or that at least the cash payments were. In the alternative, he urges that the transaction with Yount-Lee was within the meaning of Sec. 102, Revenue Acts of 1928–32, 26 U.S.C.A. Int.Rev.Acts, pages 372, 506, "a bona fide sale of * * * oil or gas wells, or any interest therein, where the principal value of the property has been demonstrated by prospecting or exploration and discovery work done by the taxpayer."

The facts were stipulated. In 1919, taxpayer leased from the Cades, the lands in question. Before March 18, 1931, he had succeeded in developing oil in commercial quantities in a number of wells. On that date he transferred the leases to the Yount-Lee Oil Company, by an instrument in writing,[2] which after reciting his acquisition of, and prior dealings with, the leases, purported to assign them to Yount-Lee, upon a consideration of $500,000 cash, and $2,000,000 to be paid out of 1/8 of the gross oil produced and saved from the leases, and to reserve and except a 25% all inclusive royalty, 10% to his lessors and an override of 15% to him, from the assignment. The division orders on which the oil was run to and paid for by pipe lines, from April 1, 1931, until 1935, when Yount-Lee sold its interests to Stanolind Oil Company, were based on 75% to Yount-Lee, 15% to McLean, 10% to lessors, and Yount-Lee settled with McLean monthly, paying him 15% on the royalty account and 1/8 or 12½% on

---

[1] 41 B.T.A. 565, 569.

[2] The significant clauses of this instrument for our purpose are:

"I, Marrs McLean, for the consideration hereinafter set forth, (and subject to the royalty reservation hereinafter contained), have Granted, Sold, Conveyed, Transferred and Assigned, and do by these presents, Grant, Sell, Convey, Transfer and Assign unto Yount-Lee Oil Company * * * the following described oil, gas and mineral leases and the oil, gas and mineral leasehold estates created thereby * * *

"The consideration for this transfer and assignment of said above-described oil, gas and mineral lease and physical properties and equipment is as follows: (a) The sum of One Hundred Thousand ($100,000) Dollars cash, receipt of which is hereby acknowledged by Grantor; (b) Two Hundred Thousand ($200,000) Dollars due and payable six (6) months after the date hereof, and Two Hundred Thousand ($200,000) Dollars due and payable twelve (12) months after the date hereof; said deferred payment to bear no interest; (c) Two Million ($2,000,000) Dollars to be paid out of one-eighth (⅛) of the (gross) oil produced and saved from the lands covered by this assignment, if, as and when produced and saved, and only in such event; it being expressly understood in this connection, that said Yount-Lee Oil Company shall be under no obligation whatever to Grantor herein to drill upon or develop said land, or any part thereof, for oil.

"There is reserved and excepted from this assignment a royalty of twenty-five (25%) per cent of the oil produced and saved from the lands covered by this assignment, out of which twenty-five (25%) per cent royalty all outstanding royalties (including royalties due lessors under the terms of said leases) and all overriding royalties are to be paid and Grantor is to receive the balance of said twenty-five (25%) per cent royalty; it being understood in this connection that said Yount-Lee Oil Company shall in any event be entitled to receive seventy-five (75%) per cent of the oil produced and saved from said land, and that all outstanding royalties, overriding royalties and/or interests of any character in the oil in, under or produced from said land shall be charged against the twenty-five (25%) per cent royalty herein reserved * * * If oil is produced from the land covered by this assignment and said Yount-Lee Oil Company runs such oil to its pipe line or to its storage * * * then said Yount-Lee Oil Company is to account to Grantor, on the payment to be made to him out of oil and for his interest in the royalty oil, on the basis of the posted field price at the well * * * In the event said Yount-Lee Oil Company sells the oil produced from said land to others, said Yount-Lee Oil Company shall account to Grantor on the payment to be made to him out of oil and for his interest in the royalty oil, on the basis of the sale price at the well received by said Yount-Lee Oil Company."

the oil payment account. After Stanolind's purchase, the division orders were based on 62½% to Stanolind and 27½% to McLean, 12½% oil payment account and 15% royalty account. In his income tax returns for the years 1931–35, inclusive, the taxpayer, treating the transfer of the leases as a sale of capital assets, reported both the cash payments totaling $500,000 and all amounts collected on account of the $2,000,000 in oil payments as capital gains and taxable under Sec. 101, Revenue Act, 1928, and Sec. 117, Revenue Act of 1934.

The respondent determined, that neither the cash nor the oil payments represented gains from the sale or exchange of capital assets, but constituted ordinary income, and allowed depletion on such payments. The Board sustained this determination. On taxpayers alternative contention before the Board, that the transaction was a sale of a mineral interest under Sec. 102, Revenue Acts of 1928–32, it was conceded that the principal value of the leases had been demonstrated by prospecting and exploration work, done by the taxpayer before the transfer to Yount-Lee, but it was determined that the transaction was not a sale under Sec. 102, any more than it was a sale under Sec. 101, that it was provision for and it has resulted in the enjoyment of income from the property.

The taxpayer is here insisting that giving its ordinary meaning to the word, sale, the transaction in question was a sale of all taxpayer's right, title and interest in the leases transferred and the estates created thereby, and in 75% of the oil produced therefrom; and that whatever might be their effect on taxpayer's right to depletion, neither the reservation of an overriding royalty nor the provision for oil payments had the effect of converting what would otherwise have been a sale, into a transfer, in the nature of a sub-lease.

He points to words of grant in the granting clause, the recitations as to the consideration for the transfer, to the fact that 75% was conveyed, and to the fact that the royalty reservation was not of an ordinary override but was really an exception from the conveyance of lessors' royalty too. He insists that the provision for payments in oil did not, in any legal sense, reserve an economic interest, but was a mere personal covenant of the grantee, and that this is emphasized by the division orders under which the pipe line payments were made, until July 31, 1935.

So insisting, he urges upon us, that the transaction in question here is not like that in Palmer v. Bender, it is like those in Helvering v. Elbe Oil Land Development Co., 303 U.S. 372, 58 S.Ct. 621, 82 L.Ed. 904, and Anderson v. Helvering, 310 U.S. 404, 60 S.Ct. 952, 84 L.Ed. 1277.

Attacking our decision in Cullen v. Commissioner of Internal Revenue, 5 Cir., 118 F.2d 651, that the reservation of a royalty interest brought the transfer within Palmer v. Bender, as an incorrect interpretation of that case, taxpayer urges us to reconsider our decision in Cullen's case, insofar as it conflicts with his view and to flatly hold that the reservation of the royalty interest must be treated, as separate and distinct from the balance of the transaction, and as having no effect upon it to prevent its being treated as a sale.

Further, but only in the alternative, taxpayer, invoking our decision in Fleming's case, infra, as authority for the view that a transfer of leases with payment of cash, and the reservation of an oil payment is a sale, insofar at least as the cash payment is concerned, insists that if he is not entitled to treat payments on account of the $2,000,000 in oil payment, as proceeds of a sale, he is at least entitled to treat the cash payments as such.

The commissioner with the rejoinder that "this is a typical Palmer v. Bender case," would make short shrift of all these arguments and contentions. Invoking Cullen's case in further support, he insists that all else aside, the reservation of the royalty settles and completely disposes of any question which might have been in the case if the reservation had been only of an oil payment.

Without undertaking any detailed or nice analysis of the language in the instrument upon which taxpayer relies, we think it plain that the transaction as a whole comes strictly within the ruling in Palmer v. Bender and Burnet v. Harmel, Cf. Morrow v. Scofield, 5 Cir., 116 F.2d 17, and Pettit v. Commissioner, 5 Cir., 118 F.2d 816. Precisely as in Palmer v. Bender, the taxpayer here, in the instrument of transfer, reserved in himself an interest in the oil in place, and thereby and as a result thereof, secured for himself, "income derived from the extraction of the oil to which he must look for a return of his capital."

Precisely as in Palmer's case, the taxpayer here retained a right to a share in

the oil as produced and an economic interest in the oil in place which is depleted by production. Precisely as in that case, the taxpayer obtained as part consideration, for letting the sub-lessee in, a part of the fruits of the land as they might be produced, both as to the royalty and as to the payments in oil. Nothing either in the opinion in the Elbe case or in the application of its principles to its facts, affords taxpayer any comfort. The opinion re-affirms Palmer v. Bender and the result there was reached because there was no reservation of royalty, there was no retention of ownership of or interest in the, minerals in place. There was only a personal covenant to pay the taxpayer, not out of minerals in place but out of the net proceeds of a processing or manufacturing operation. Nor can the taxpayer take comfort from anything said or decided in Anderson v. Helvering, 310 U.S. 404, 60 S.Ct. 952, 84 L.Ed. 1277. In its every line it affirms and re-affirms the views which produced and which underlie the decisions in the Palmer and Harmel cases. Its application of those principles to its facts was not a repudiation, it was a vindication of them. We are not at liberty to repudiate or, at this late date, to even question those principles. We cannot afford taxpayer the relief he asks without doing both. Besides if we were disposed to do so, taxpayer's argument furnishes us no sound ground on which to stand in doing it. Urging Fleming's case, Commissioner v. Fleming, 5 Cir., 82 F.2d 324, as a guide for us to follow, he attacks Cullen's case because it follows Fleming's [3] in holding that the reservation of a royalty in addition to the cash and oil payments, makes it a sub-lease and brings the case directly within Palmer v. Bender.

We think it clear that Cullen's case, upon the point of appellant's attack, is correctly decided and we have no disposition to question or depart from it. We think too, that it completely disposes against him, of appellant's whole Sec. 101 case, and renders it unnecessary for us to consider what we ought to do with it here, if this were a case like Fleming's was, and like Cullen's was in part, of cash and oil payments, without the reservation of an additional royalty.

██ Upon taxpayer's second point that if the case is not one for the application of Sec. 101, he should have relief under Sec. 102. We need say only that we think it plain that the considerations which determine his Sec. 101 contention against him are equally controlling in determining that under Sec. 102 against him too. Both sections apply where there is a sale, neither applies where there is not. Sec. 101 applies to sales in general, Sec. 102 to sales of the kind and under the circumstances it particularly deals with. There was no sale here. The judgment of the Board was right. It is affirmed.

---

[3] "In Palmer v. Bender, however, the transferor reserved an additional royalty, and so was in reality a sublessor, and the cash paid him could more readily be treated as a bonus or advance royalty." Commissioner of Internal Revenue v. Fleming, 5 Cir., 82 F.2d at page 327.