HOGAN v. COMMISSIONER OF
INTERNAL REVENUE.

COMMISSIONER OF INTERNAL REVE-
NUE v. HOGAN.

No. 10749.

Circuit Court of Appeals, Fifth Circuit.

Feb. 25, 1944.

James H. Yeatman, of Houston, Tex., for Fred T. Hogan.

Joseph M. Jones, Sewall Key, Robert N. Anderson, and Helen Goodner, Sp. Assts. to the Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., and J. P. Wenchel, Chief Counsel, Bureau of Internal Revenue, and Charles E. Lowery, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for Commissioner of Internal Revenue.

Before HOLMES, WALLER, and LEE, Circuit Judges.

LEE, Circuit Judge.

This case comes to us on separate petitions of Fred T. Hogan, the taxpayer, and the Commissioner of Internal Revenue for a review of a decision of the Tax Court. Both causes were consolidated upon joint motion for printing the record, briefing, argument and decision. The questions presented for determination are:

1. Was the transfer by Choate & Hogan, a partnership of which taxpayer was a member, of an interest in a producing oil and gas lease and all equipment thereon, for cash and the reservation of an overriding royalty, a sale resulting in a capital gain taxable under Section 117 of the Revenue Act of 1938[1] or a sublease resulting in ordinary income under Section 22(a) of the Act, 26 U.S.C.A. Int.Rev.Acts, pages 1061, 1008?

2. Did title to the leasehold equipment pass with the interest in the lease; if so, was the depreciated cost deductible from the cash consideration paid?

The facts out of which this litigation grew are as follows: Mrs. M. L. Baker executed, on September 8, 1924, an oil and gas lease in favor of G. A. Tunstill, covering approximately 1,250 acres of land situated in Upton County, Texas. The lease provided for the usual one-eighth (1/8) royalty of oil, for one-eighth (1/8) of the value of casinghead gas utilized and for $200 per annum for each gas well from which gas was used off the premises or marketed by lessee. Fred T. Hogan and L. H. Choate, acting for themselves and W. G. Choate, acquired 230 acres of this lease on December 18, 1936, as to all rights thereunder and incident thereto down to the depth of 2750 feet, by mesne assignments out of G. A. Tunstill, the original lessee, subject to one-sixteenth (1/16) overriding royalty in favor of the Continental Oil Company.[2] Hogan and the two Choates formed a partnership under the name of Choate & Hogan, for the purpose of owning, developing, and operating the lease, the profits and losses of said partnership in keeping with the ownership of the lease, to be shared 50% by Hogan and 50% by L. H. Choate and W. G. Choate. The partnership owned and operated the property until August 22, 1938, drilling and completing thereon six producing oil wells. On August 11, 1938, the partnership entered into a contract with McAlester Fuel Company pursuant to which Fred T. Hogan and L. H. Choate, on August 22, 1938, at the request of McAlester Fuel Company, executed, and, upon payment of $110,000, delivered to Sylva Oil Company an assignment reading in part as follows:

"The undersigned L. H. Choate and Fred T. Hogan, the present owners of said lease * * * do hereby bargain, sell, assign and convey subject to * * * the reservation of 1/16th overriding royalty in said assignment from the Continental Oil Company to Roy R. Brown, all rights, title and interest to the original lessee and the present owner in and to said lease, and rights thereunder or incident thereto, * * * at and above the depth of two thousand seven hundred fifty feet from the surface in and under the said 230 acres of land above described, together with all wells and equipment thereof, including

---

[1] 52 Stat. 447.

[2] On July 7, 1925, Tunstill assigned the lease except as to certain acreage to Marland Oil Company and as a result of the consolidation of that Company with the Continental Oil Company on July 1, 1929, the lease became the property of the Continental Oil Company. On December 3, 1936, Continental Oil Company assigned to Roy R. Brown all of its rights, titles and interest in the lease "so far as said lease covers and affects the oil, gas and casinghead gas, and the oil, gas and casing-head gas rights, at and above the depth of 2750 feet from the surface," as to 230 acres specifically described. Brown agreed in this assignment that "as a part of the consideration * * *, the assignor shall receive, as an overriding royalty, one-sixteenth (1/16) of all the oil, gas and casinghead gas produced, saved and sold" from the assigned premises. On December 18, 1936, Brown conveyed the interest so acquired subject to the terms and conditions of his assignment from the Continental Oil Company to Fred T. Hogan and L. H. Choate.

pumps, casing, piping, tanks, lease house, and all other personal property on or used in connection with said premises, including oil in storage, to Sylva Oil Company, a Texas corporation, its successors and assigns; save and except that assignors herein expressly reserve to themselves, their heirs and assigns and do not assign or convey to assignee herein 1/8th of 8/8ths of all oil and gas and casinghead gas which may be produced and saved by Sylva Oil Company, its successors and assigns, from the aforesaid land at and above the depth of two thousand seven hundred fifty feet from the surface * * *; such reservation of overriding royalty or share of production to be 1/16th of 8/8ths in favor of L. H. Choate and 1/16th of 8/8ths in favor of Fred T. Hogan. * * *"

The partnership in its return for 1938 allocated $98,454.70 of the cash consideration to the leasehold and the remainder of $11,545.30 to the equipment. It treated the net gain from the transfer of the leasehold of $71,870.92 as a long-term capital gain, taxable to the extent of $47,913.95, and the net loss from the transfer of the equipment of $11,545.30 as an ordinary loss. This gain and loss was divided among the partners in the following proportions:

|  | Gain | Loss |
|---|---|---|
| Fred T. Hogan..1/2 | $23,956.98 | $ 5,772.65 |
| L. H. Choate...1/8 | 5,989.24 | 1,443.16 |
| Lucille Choate..1/8 | 5,989.24· | 1,443.16 |
| W. G. Choate...1/4 | 11,978.49 | 2,836.33 |
|  | $47,913.95 | $11,545.30 |

The Commissioner refused to recognize the assignment as a sale, contending that it was a sublease and that the consideration of $110,000 was a bonus, and computed the gain on the transaction as follows:

| "Oil Income"..... |  | $110,000.00 |
|---|---|---|
| Less—Depletion .. | $30,250.00 |  |
| Commissions ..... | 3,000.00 | 33,250.00 |
| Net income ............... |  | $ 76,750.00 |

The Tax Court held: (1) That the partnership was not entitled to treat the assignment as a sale, but must look to depletion for the return of its capital. (2) That title to the equipment passed to Sylva Oil Company under the assignment and the partnership was entitled to an allowance for the unrecovered cost of said equipment. The taxpayer petitions for review of the first holding. The Commissioner petitions for review of the second holding. We shall consider separately the questions presented.

■ 1. The assignment and transfer of a producing oil and gas lease for cash and a reservation of an overriding royalty in some states is the sale of the oil and gas in place, and in others, a sublease. The assignment, therefore, in the present case would be a sale in some states and a sublease in others, dependent upon local law. In applying the income tax statute, however, the Supreme Court has held that technical distinctions of local laws will be disregarded, and the statute will be interpreted so as to apply uniformly.[3]

■ When the owner and operator of a producing oil and gas lease assigns and transfers it for cash and the payment of an overriding royalty, he retains an economic interest in the oil and gas in place which will be depleted by production.[4] The cash bonus received by him is treated as advance royalty with the same tax incidence.[5] The granting clause in such an assignment is oftentimes written in language used in a sale, and standing alone would effect a sale; but where the granting clause conveys all of the rights of the assignor and is qualified by other parts, parts for instance, reserving in the assignor an overriding royalty, the assignment, for income tax purposes, partakes of the nature of a sublease rather than of a sale and is of the character of transaction with respect to which relief is granted in the Act [6] by the allowance of depletions.[7]

In the case of Burnet v. Harmel, 287 U. S. 103, at page 106, 53 S.Ct. 74, at page 75, 77 L.Ed. 199, the Supreme Court, discussing the Texas law which treats an oil and gas lease as a sale of minerals in place,

[3] Palmer v. Bender, 287 U.S. 551, 53 S. Ct. 225, 77 L.Ed. 489.

[4] Palmer v. Bender, 287 U.S. 551, 53 S. Ct. 225, 77 L.Ed. 489; Murphy Oil Co. v. Burnet, 287 U.S. 299, 53 S.Ct. 161, 77 L.Ed. 318; Burnet v. Harmel, 287 U.S. 103, 53 S.Ct. 74, 77 L.Ed. 199; McLean v. Commissioner, 5 Cir., 120 F.2d 942.

[5] Burnet v. Harmel, 287 U.S. 103, 53 S.

Ct. 74, 77 L.Ed. 199; Murphy Oil Co. v. Burnet, 287 U.S. 299, 53 S.Ct. 161, 77 L. Ed. 318; Bankers Pocahontas Coal Co. v. Burnet, 287 U.S. 308, 53 S.Ct. 150, 77 L. Ed. 325.

[6] Revenue Act of 1938.

[7] Cf. Thomas v. Perkins, 301 U.S. 655, 57 S.Ct. 911, 81 L.Ed. 1324; McLean v. Commissioner, 5 Cir., 120 F.2d 942.

pointed out that nevertheless such a document was a lease instead of a sale within the ordinary conception of the word as used in the "Capital Gains" section of the Revenue Act of 1924, 26 U.S.C.A. Int.Rev.Acts, page 13, and said: "It is an incident of every oil and gas lease, where production operations are carried on by the lessee, that the ownership of the oil and gas passes from the lessor to the lessee at some time, and the lessor is compensated by the payments made by the lessee for the rights and privileges which he acquires under the lease. But, notwithstanding this incidental transfer of ownership, it is evident that the taxation of the receipts of the lessor as income does not ordinarily produce the kind of hardship aimed at by the capital gains provision of the taxing act. Oil and gas may or may not be present in the leased premises, and may or may not be found by the lessee. If found, their abstraction from the soil is a time-consuming operation, and the payments made by the lessee to the lessor do not normally become payable as the result of a single transaction within the taxable year, as in the case of a sale of property. The payment of an initial bonus alters the character of the transaction no more than an unusually large rental for the first year alters the character of any other lease, and the taxation of the one as ordinary income does not act as a deterrent upon conversion of capital assets, any more than the taxation of the other."

We agree with the Tax Court that the partnership was not entitled to treat the assignment as a sale of a capital asset, but must look to depletion for the return of its capital.

2. We also agree with the Tax Court that title to the equipment passed from the partnership to Sylva Oil Company under the assignment, and that the partnership was entitled to deduct from the cash consideration the depreciated cost of said equipment. The assignment conveyed to Sylva Oil Company not only an interest in a producing oil and gas lease, but all equipment thereon. Under the Act, depletion percentage on the bonus received and the royalty reserved is not a deduction associated with equipment cost. Equipment cost is recoverable through depreciation allowances and not "by percentage depletion allowances", as apparently was inadvertently stated in Cullen v. Commissioner.[8] It is

only with respect to wasting assets that depletion allowances are made.[9]

While the taxpayer in his assignments of error urged, as he had done before the Tax Court, that the gain derived from the transaction with Sylva Oil Company was community income of himself and wife, we deem that contention as abandoned in this Court, for it is not urged in the points for consideration as set forth in the taxpayer's brief; no part of the brief is devoted to a discussion thereof; and in oral argument before the Court no reference was made thereto.

We find no error in the opinion and decree of the Tax Court. Its holding is, therefore, affirmed.