SETH CAMPBELL AND NEVA CAMPBELL, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 93478.   Filed October 24, 1963.

*Parker C. Fielder* and *George Finley*, for the petitioners.
*Roy E. Graham*, for the respondent.

**OPINION**

The issue to be determined is whether under the peculiar facts of this case petitioners are entitled to percentage depletion under sections 611(a)[1] and 613(b)(1)[2] of the Internal Revenue Code of 1954, on a

---

[1] SEC. 611. ALLOWANCE OF DEDUCTION FOR DEPLETION.

(a) GENERAL RULE.—In the case of mines, oil and gas wells, other natural deposits, and timber, there shall be allowed as a deduction in computing taxable income a reasonable allowance for depletion and for depreciation of improvements, according to the peculiar conditions in each case ; such reasonable allowance in all cases to be made under regulations prescribed by the Secretary or his delegate. * * *

bonus received for the execution of an oil and gas lease that was released within the taxable year.

The rule, as established by the Supreme Court in *Burnet* v. *Harmel*, 287 U.S. 103 (1932), is that bonus paid in connection with the execution of an oil and gas lease is to be treated as advance royalty and hence as ordinary income subject to depletion. The underlying theory of the depletion allowance is to compensate the owner for the exhaustion of the mineral deposits in the course of production. In *Herring* v. *Commissioner*, 293 U.S. 322 (1934), it was held that the depletion allowance was available in the year of receipt of the bonus even though no production occurred or was imminently foreseeable in that year.

Following the decision in *Herring*, the Commissioner promulgated regulations providing that depletion taken with respect to a bonus must be restored to income where there is termination, abandonment, or expiration of a lease without production. The Commissioner's authority to issue regulations to that effect was upheld by the Supreme Court in *Douglas* v. *Commissioner*, 322 U.S. 275 (1944).

The question then arose as to whether a taxpayer would be required to restore bonus depletion to income where only nominal production occurred. In *Dolores Crabb*, 41 B.T.A. 686 (1940), where taxpayers received $36.98 from both a royalty and a reserved oil payment prior to the lease termination, it was held that restoration was not required since there had been actual depletion, though small in amount.

Petitioners, relying on the foregoing cases and section 1.612–3(a)(2), Income Tax Regs.,[3] contend that they are entitled to depletion on the bonus received and that they are not required to restore such to income since they realized royalty income from the property prior to the termination of the lease.

While the cases cited by petitioners are relevant in that taken together they show that the depletion allowance is not an irrevocable grant that can stand without some subsequent extraction, they are not controlling in the factual pattern which is before us here. In those cases the leases were in effect at the end of the year in which the bonus was received and, since it was still possible for production to occur

---

[2] SEC. 613. PERCENTAGE DEPLETION.

(a) GENERAL RULE.—In the case of the mines, wells, and other natural deposits listed in subsection (b), the allowance for depletion under section 611 shall be the percentage, specified in subsection (b), of the gross income from the property * * *

(b) PERCENTAGE DEPLETION RATES.—The mines, wells, and other natural deposits, and the percentages, referred to in subsection (a) are as follows:

(1) 27½ percent—oil and gas wells.

[3] Sec. 1.612–3(a)(2), Income Tax Regs.

"If the grant of an economic interest in a mineral deposit or standing timber with respect to which a bonus was received expires, terminates, or is abandoned before there has been any income derived from the extraction of mineral or cutting of timber, the payee shall adjust his capital account by restoring thereto the depletion deduction taken on the bonus and a corresponding amount must be returned as income in the year of such expiration, termination, or abandonment."

during the tenure of the lease, depletion was allowed as advance royalty. When the leases were terminated in subsequent years and no production had occurred, the question arose as to the restoration of the previously allowed depletion to income since the anticipated exhaustion of the oil and gas deposit had not occurred.

In the instant case all of the taxable events took place within the taxable year. The bonus was received, the well was drilled and abandoned as a dry hole, and the lease was released, all in 1959. There has been no previous depletion allowed for tax purposes and there is nothing to restore to income. It is our view, therefore, that the regulation and cases dealing with restoration are not applicable here.

The question, rather, is whether, considering the taxable year as a whole and the facts as they existed at the end of such year, petitioners are entitled to an *initial* allowance for depletion. It is clear that the bonus cannot be considered advance royalty for future production since there can be no production under the lease which was released due to the determination that the well was a dry hole. Given no prospect for *actual* depletion, the reason for allowing a deduction for bonus depletion has disappeared.

Petitioners contend, however, that there was production, that they received income in the amount of one-eighth of the value of 15 barrels of oil which were recovered before the well was abandoned, and that under the rule in *Dolores Crabb, supra*, this nominal amount of "production" entitles them to depletion on the bonus.

While the correctness of the *Crabb* decision may be open to question, we think petitioners' reliance on it here is misplaced because it involved restoration of previously deducted depletion and its facts are clearly distinguishable. In *Crabb* there was actual production under commercial conditions. Although there was only nominal production of oil, from which the taxpayers received royalty, a potentially profitable gas well was obtained. The completed well was not a dry hole; it was abandoned because the unskillful method by which it was completed made further oil operations unprofitable.

On the other hand, the well on petitioners' lease was abandoned as a dry hole. During the acidizing process, the last attempt to complete the well as a producer, 15 barrels of new oil were swabbed into the test tank and commingled with the load oil. After the well was plugged and abandoned, Sinclair removed 262 barrels of the 270 barrels of load oil that had been hauled to the lease. It is logical to assume, therefore, that the 15 barrels of new oil, so contaminated with mud as to be unsalable, were either lost or left in the well hole. See *Rogers* v. *Osborn*, 152 Tex. 540, 261 S.W. 2d 311 (1953), where the Supreme Court of Texas said: "The word 'production' means marketable oil

and gas." Nevertheless, Sinclair agreed to pay petitioners $1.84 for their share of the value of 15 barrels. Indeed, it is doubtful that petitioners were entitled to receive anything under the lease since the oil that was recovered and lost was neither sold nor used on the premises in the drilling operations as required by the lease provision under which petitioners claimed royalty.

Be that as it may, we find that there has been no *production* of oil in the ordinary sense [4] and no depletion which entitles petitioners to any deduction. To allow petitioners the deduction they claim would be to sever depletion from exhaustion and to defeat the purpose for which the depletion statutes were enacted. Consequently, we hold that petitioners are not entitled to any deduction for depletion.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

RAUM, *J.*, concurring: Although I agree with the result reached in this case, I would not make it turn upon the fortuitous circumstance that all the events took place within the same tax year, and thereby apply a different standard for the allowance of a depletion deduction in the first instance than would be employed where the events straddled 2 tax years and where the amount of the deduction initially allowed is restored to income in the later year. The same result should follow regardless of whether the well was abandoned as a dry hole and the lease terminated in the year the bonus was received, and regardless of whether there was no production at all or merely nominal production. It is inconceivable to me that Congress could have intended to allow a depletion deduction in such circumstances without an offsetting adjustment upon termination of the lease, whenever that might occur. To the extent that *Dolores Crabb*, 41 B.T.A. 686,[1] is to the contrary, I think it is wrong and should not be followed.

OPPER, MULRONEY, and FORRESTER, *JJ.*, agree with this concurring opinion.

---

[4] It is apparent that for the purpose of reports required in the oil and gas industry, Sinclair considered that no oil or gas was produced as evidenced by its sworn representations to that effect in the Application to Plug and Well Record and the Plugging Record filed with the Railroad Commission of Texas.

[1] The issue in *Dolores Crabb* in respect of the lease in which there was nominal production, as in the present case, does not appear to have been reviewed on appeal. 119 F. 2d 772 (C.A. 5), 121 F. 2d 1015 (C.A. 5), 136 F. 2d 501 (C.A. 5).