BAYOU VERRET LAND CO., INC.,[1] PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 6308–66.    Filed September 23, 1969.

[1] This case was tried in consolidation with Carlos Marcello, docket No. 3532–64; Anthony and Jeannine Marcello, docket No. 3533–64; Jacqueline Marcello, docket No. 3534–64; Carlos and Jacqueline Marcello, docket Nos. 3744–65 and 2908–66; Salvador J. and Florence Marcello, docket Nos. 3535–64 and 3981–65; Joseph C. and Barbara Marcello, docket Nos. 3743–65 and 2907–66; Frank and Lady Patricia Occhipinti, docket No. 5691–65; Rosario and Julia Occhipinti, docket No. 5760–65; and Churchill Farms, Inc., docket No. 6307–66. The present case is severed for a separate opinion.

*deQuincy V. Sutton,* for the petitioner.
*William O. Lynch,* and *Harold Friedman,* for the respondent.

974

OPINION

A. *Personal holding company issues.*—The years here in controversy, 1959 through 1964, span significant changes in the personal holding company tax provisions. Amendments, enacted by the Revenue Act of 1964, Pub. L. 88–272, 78 Stat. 19, apply to taxable years beginning after December 31, 1963. The issue is whether, under the applicable statute, petitioner is subject to the personal holding company tax for each of the years before the Court.

1. *Pre-1964 years.*—Petitioner's income for 1959 through 1963 consisted only of (1) bonuses received on the execution of oil and gas leases [4] and (2) amounts corresponding to sums previously deducted as percentage depletion (sometimes referred to hereinafter as previously deducted depletion), which were returned as income in the current years under section 1.612–3(a)(2), Income Tax Regs.,[5] as follows:

| Year | Bonus | Previously deducted depletion |
|---|---|---|
| 1959 | $10,260.00 | |
| 1960 | 9,576.00 | $2,821.50 |
| 1961 | 6,995.00 | 2,633.50 |
| 1962 [1] | 2,600.00 | 1,923.63 |
| 1963 | 17,862.50 | 715.00 |

[1] Respondent did not determine that petitioner was subject to the personal holding company tax for 1962.

Pre–1964 section 542(a)(1)[6] defined "personal holding company" to mean any corporation (with exceptions not relevant here) if at least 80 percent of its gross income for the taxable year was personal holding company income. Pertinent to the present controversy, pre–

---

[4] Petitioner argues that the payments in issue were rental income from a "shooting option" and lease, and that its personal holding company status must be measured by pre-1964 sec. 543(a)(7), relating to rents. But petitioner failed to introduce evidence as to the contents of all its leases or otherwise to show that the lease payments were not cash bonuses. They were so reported in petitioner's income tax returns (for all years except 1959, when the payment was shown as an amount received for a "shooting-and-selection" lease). Moreover, as indicated in our findings, the only lease introduced in evidence calls for an initial cash bonus payment. Cf. *Bennett* v. *Scofield,* 170 F. 2d 887 (C.A. 5, 1948); *Houston Farms Development Co.* v. *United States,* 131 F. 2d 577, 579 (C.A. 5, 1942); Judge, "Tax Considerations of the Oil and Gas Royalty Owner," 31 Taxes 828, 830 (1953).

[5] Sec. 1.612–3 *Depletion; treatment of bonus and advanced royalty.*

(a) *Bonus.* * * *

(2) If the grant of an economic interest in a mineral deposit or standing timber with respect to which a bonus was received expires, terminates, or is abandoned before there has been any income derived from the extraction of mineral or cutting of timber, the payee shall adjust his capital account by restoring thereto the depletion deduction taken on the bonus and a corresponding amount must be returned as income in the year of such expiration, termination, or abandonment.

[6] SEC. 542. DEFINITION OF PERSONAL HOLDING COMPANY.

(a) GENERAL RULE.—For purposes of this subtitle, the term "personal holding company" means any corporation (other than a corporation described in subsection (c)) if—

(1) GROSS INCOME REQUIREMENT.—At least 80 percent of its gross income for the taxable year is personal holding company income as defined in section 543, and

1964 section 543 (a) (8) defined "personal holding company income" to include—

(8) * * * Mineral, oil, or gas royalties, unless—

   (A) such royalties constitute 50 percent or more of the gross income, and

   (B) the deductions allowable under section 162 (relating to trade or business expenses) other than compensation for personal services rendered by the shareholders, constitute 15 percent or more of the gross income.

Thus, petitioner's status under the personal holding company provisions for the years prior to 1964 initially depends on whether the bonuses or the previously deducted depletion, or both, constitute "mineral, oil, or gas royalties." If so, the prescribed mathematical computations must be made.

Relying on *Porter Property Trustees, Ltd.*, 42 B.T.A. 681 (1940), petitioner contends that the term "royalties" as used in pre-1964 section 543 (a) (8) implies a division between the lessor and lessee of the mineral products or the proceeds realized therefrom, and that bonuses, therefore, do not constitute royalties if, as here, there is no actual production under the leases.

Respondent argues to the contrary, relying on *Commissioner* v. *Clarion Oil Co.*, 148 F. 2d 671 (C.A. D.C. 1945), reversing 1 T.C. 751 (1943), certiorari denied 325 U.S. 881 (1945). In that case the Court of Appeals held that a cash bonus received on the execution of an oil and gas lease was personal holding company income even though no production ensued. Upon careful reflection we have decided to follow the holding of the Court of Appeals in the *Clarion* case, and we will no longer follow our holding therein on this issue.[7]

The original version of the personal holding company tax, enacted by the Revenue Act of 1934, 48 Stat. 680, contained no special provision relating to mineral royalties, but section 351(b) (1) thereof defined the term "personal holding company" to mean any corporation (with specified exceptions) if, *inter alia*, at least 80 percent of its gross income for the taxable year was derived from "royalties" or other designated types of income. Section 353(h) of the Revenue Act of 1937, 50 Stat. 813, rearranged the definition of personal holding company income, separating mineral, oil, and gas royalties from other types of royalties, and adopted language substantially similar to pre-1964 section 543 (a) (8), quoted above.

Prior to the adoption of the Revenue Act of 1934, a series of court decisions had defined the income tax character of a bonus received on the execution of an oil and gas lease. These decisions had established

---

[7] Our decision in *Seth Campbell*, 41 T.C. 91, 94 (1963), where we held that no deduction for depletion was allowable on a bonus when events occurring in the same year in which the bonus was received assured that there would be no production, actual or anticipated, is clearly distinguishable.

that both the bonus and royalties are consideration for the lease, taxable as ordinary income rather than capital gain, even where, under applicable State law, the lease effects a conveyance of title to the mineral in place. The "payment of an initial bonus alters the character of the transaction no more than an unusually large rental for the first year alters the character of any other lease * * *." *Burnet* v. *Harmel*, 237 U.S. 103, 106 (1932). It was reasoned that mineral in the ground is a "reservoir of capital investment of the several parties" entitled to share in production; that payment of a bonus reduces the lessor's, and thus increases the lessee's, capital investment to the extent of the depletion allowable thereon;[8] and that since the lessor receives a bonus, he will receive a correspondingly reduced royalty share in future production. *Palmer* v. *Bender*, 287 U.S. 551, 558 (1933); *Murphy Oil Co.* v. *Burnet*, 287 U.S. 299 (1932). Consequently, if the lessor retains the right to share in the oil or gas when produced, the bonus is in every real sense "payment in advance for oil and gas to be extracted" even though no production is obtained in the year in which the bonus is paid, *Herring* v. *Commissioner*, 293 U.S. 322, 324 (1934).

A review of these principles led the Court of Appeals in *Clarion Oil Co.*, *supra*, to declare:

> The inevitable result of this is to indicate that the word "bonus", as used in oil leasing parlance, is, in relation to federal taxation, included in the word "royalty;" and this meaning had become fixed and certain before Congress enacted the Revenue Act of 1934 * * *. [148 F. 2d at 674.]

Other court opinions, with equal clarity, also have described bonuses to be advance royalty. See, e.g., *Anderson* v. *Helvering*, 310 U.S. 404, 409 (1940); *Bankers Coal Co.* v. *Burnet*, 287 U.S. 308, 313 (1932); *McLean* v. *Commissioner*, 120 F. 2d 942, 945 (C.A. 5, 1941); cf. *Work* v. *Mosier*, 261 U.S. 352, 357–358 (1923).

In *Murphy Oil Co.* v. *Burnet*, *supra* at 306, the Supreme Court explained that allowance of the depletion deduction on the basis of anticipated production was required, among other reasons, to avoid "the attendant inconvenience of indefinite postponement of the allocation of the bonus to income and return of capital." Also see *Sneed* v. *Commissioner*, 119 F. 2d 767, 770 (C.A. 5, 1941), affirming 40 B.T.A. 1136 (1939), rehearing denied 121 F. 2d 725 (C.A. 5, 1941), certiorari denied sub nom. *Thompson* v. *Helvering*, 314 U.S. 686 (1941). The same practical administrative considerations require classifying bonus income for personal holding company tax purposes in the year of receipt even though no actual production has been obtained; otherwise,

---

[8] As to the bonus, the Court in *Palmer* v. *Bender*, 287 U.S. 551, 559 (1933), explained:

"The bonus received * * * was a return *pro tanto* of the petitioner's capital investment in the oil, in anticipation of its extraction, resulting in a corresponding diminution in the unit depletion allowance upon the royalty oil as produced. * * *"

the status of the recipient corporation could remain in limbo indefinitely.

Accordingly, we hold that the term "royalties" as used in pre-1964 section 543(a)(8) includes cash bonuses received on the execution of oil and gas leases.

We now direct our attention to petitioner's other income item—the amounts equivalent to prior depletion deductions reported as income pursuant to section 1.612-3(a)(2), Income Tax Regs. Respondent contends that these amounts represent portions of the earlier oil and gas lease bonuses deferred from taxation through the device of the depletion deduction, and that, when reported as income, they regain their original character as royalties. We disagree. Since the full amount of the bonus, without any diminution for depletion, is treated as royalty income in the year of its receipt, no purpose of the personal holding company provisions would be served by also treating the previously deducted depletion as royalty income in the year of restoration. Moreover, in *Douglas* v. *Commissioner*, 322 U.S. 275 (1944), involving minimum royalties, the Supreme Court sustained the validity of the predecessor of regulations section 1.612-3(a)(2), not on the theory that the restored sums constitute royalties, but on the following grounds:

[The depletion] deductions were not finally charged to basis but were tentatively so charged subject to the contingency that there should occur under the lease an actual extraction of mineral units which would be allocable to the deduction. * * * [T]here was the further requirement that if the contingency failed, the suspended sums should fall into income in the year that the failure was manifested by the termination of the lease. * * *

* * * On the termination of the lease, the lessee surrendered the right to extract without royalty the ore for which royalty had been prepaid. This surrender returned to the taxpayer in 1937 a legal right. Thereupon the taxpayer was in position to again sell the right to extract the ore or to mine that selfsame ore itself. The record does not show any valuation of this right which the lessee surrendered. The lessee paid for the right the amount attributed to the petitioner's income. Irrespective of the actual value of the right in 1937, it does not seem unfair for a general regulation to put this value on the right restored to the taxpayer in the year of its restoration. * * * [322 U.S. at 285–286.]

See also *Louisiana Delata Hardwood Lumber Co.*, 12 T.C. 576 (1949), affirmed per curiam 183 F. 2d 189 (C.A. 5, 1950). Thus, the previously deducted depletion is not royalty or any other form of personal holding company income within the meaning of pre-1964 section 543.

Nor is the previously deducted depletion part of petitioner's "gross income" for the purposes of applying pre-1964 sections 542(a)(1) and 543(a)(8)(B). This Court and others have held that "gross income" as used in the personal holding company tax provisions must be determined in the light of the objectives of those provisions. See, e.g., *Wood-*

*side Acres* v. *Commissioner*, 134 F. 2d 793 (C.A. 2, 1943), affirming 46 B.T.A. 1124 (1942) ; *Garrett Holding Corporation*, 9 T.C. 1029 (1947). The stated objective of the percentage requirements of pre-1964 sections 542(a)(1) and 543(a)(8)(B) was to "furnish a satisfactory separation between companies which may be classified as operating companies and the pure holding company type." S. Rept. No. 1242, 75th Cong., 1st Sess. 1 (1937), 1939–1 (Part 2) C.B. 703. Sums previously deducted as depletion when "returned as income" constitute income from neither business operations nor investments. Indeed, they are not income at all in the traditional sense of "gain derived from capital, from labor, or from both combined." *Eisner* v. *Macomber*, 252 U.S. 189, 207 (1920). While the occasion for the tax is the *return* of property to the taxpayer in respect of which a deduction has been previously taken, cf. *Alice Phelan Sullivan Corp.* v. *United States*, 381 F. 2d 399, 401 (Ct. Cl. 1967), inclusion of the "suspended sums" in income for income tax purposes is essentially an accounting adjustment to prevent final allowance of a depletion deduction "apart from actual or prospective extraction" and to avoid the deflection of "income into the capital account without any corresponding capital loss." *Douglas* v. *Commissioner, supra* at 284; cf. *Sneed* v. *Commissioner, supra*. Therefore, "gross income" for purposes of pre-1964 sections 542(a)(1) and 543(a)(8)(B) does not include the sums returned as income under section 1.612–3(a)(2) of the regulations, but includes only the amount of the bonuses received by petitioner in each of the tax years without any adjustment for depletion.[9]

Applying these principles, more than 80 percent of petitioner's gross income for each of the years 1959, 1960, 1961, and 1963 is personal holding company income, unless petitioner satisfies the 15-percent requirement of pre-1964 section 543(a)(8)(B).

The parties disagree as to whether deductions under section 162 are allowable for (1) directors' fees disbursed in 1959, 1960, and 1961; (2) depletion claimed in 1960, 1961, and 1963; (3) taxes paid in these 3 years; (4) interest paid in 1963; and (5) a net operating loss deduction in 1959. Respondent concedes that expenditures for legal and auditing services, insurance, accounting services, and professional and other services, described in our findings, are section 162 deductions.

Section 162 allows as a deduction "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any

---

[9] The correctness of these conclusions is confirmed by the fact that an opposite holding would require a taxpayer who had claimed percentage depletion to treat each $1 of bonus income as $1.275 of personal holding company income if the oil and gas lease is canceled without production—$1 in the year of the receipt of the bonus, and $0.275 in the year of cancellation ; would dilute the 80-percent requirement of pre-1964 sec. 542(a)(1) ; and would make the 15-percent requirement of pre-1964 sec. 543(a)(8)(B) more onerous. Cf. *United States* v. *Skelly Oil Co.*, 394 U.S. 678 (1969).

trade or business," including, among other enumerated expenses, "a reasonable allowance for salaries or other compensation for personal services actually rendered." Quite clearly this provision covers petitioner's expenditures for directors' fees. *Waldheim & Co.*, 25 T.C. 594 (1955). However, pre-1964 section 543(a)(8)(B) refers to section 162 deductions "other than compensation for personal services rendered by the shareholders." Since the burden of proof rested with petitioner, and it offered no proof to show that the directors to whom the fees were paid in 1959, 1960, and 1961 were not also shareholders, these fees may not be included as section 162 deductions in the computations under pre-1964 section 543(a)(8)(B).

For income tax purposes petitioner claimed, and was allowed, depletion deductions in each of the years in controversy except 1964. In making the computations under pre-1964 section 543(a)(8)(B), petitioner does not, in express terms, treat the depletion deductions as section 162 deductions. However, the method used by petitioner reaches the same result in a roundabout fashion. Thus, for each year, petitioner subtracts the depletion deduction from the bonus upon which it was claimed, and treats the remainder as gross income for the purposes of pre-1964 section 543(a)(8)(B), while at the same time excluding from gross income the amount deducted as depletion in the previous year and currently reported as income. Petitioner's computations are erroneous.

There is no statutory basis for treating the *net* figure—the bonus income minus the depletion deduction—as *gross* income for pre-1964 section 543(a)(8)(B) purposes. Cf. sec. 1.61–3(a), Income Tax Regs. Nor is the depletion allowance a section 162 deduction; it is not an expense "paid or incurred during the taxable year." The theory of the depletion deduction allowed by sections 611 and 613 is that the extraction of minerals gradually exhausts the capital investment in the mineral deposit, *Commissioner* v. *Southwest Expl. Co.*, 350 U.S. 308, 312 (1956); its purpose is "to permit the owner of a capital interest in mineral in place to make a tax-free recovery of that depleting capital asset." *Parsons* v. *Smith*, 359 U.S. 215, 220 (1959).

Concerning the real estate and franchise taxes paid by petitioner, respondent argues that they are not section 162 deductions because they are specifically allowable under section 164.[10] We rejected an analogous argument with respect to an interest deduction in *McNutt-Boyce Co.*, 38 T.C. 462 (1962), affirmed per curiam 324 F. 2d 957 (C.A. 5, 1963), acq. 1966–2 C.B. 6. We must also reject respondent's argument here.

---

[10] SEC. 164. TAXES.

(a) GENERAL RULE.—Except as otherwise provided in this section, there shall be allowed as a deduction taxes paid or accrued within the taxable year.

In *McNutt-Boyce* we pointed out that section 162 allows the deduction of *all* the ordinary and necessary expenses of carrying on any trade or business. The section specifies the conditions for the allowance of certain expenses as deductions, but says nothing specifically about taxes. Yet taxes are ordinary and necessary expenses of any business. See *Elmer Reise*, 35 T.C. 571, 580 (1961), affd. 299 F. 2d 380 (C.A. 7, 1962). For taxable years beginning before January 1, 1964, section 164 provides a deduction for taxes regardless of whether they meet the ordinary and necessary business expense test. To the extent that taxes paid on petitioner's income-producing property also meet the test of a business expense, the two sections (162 and 164) may be said to "overlap," and such taxes could be deducted under either of the two sections. See 4A Mertens, Law of Federal Income Taxation, sec. 25.05, p. 25. That the deduction for taxes was authorized by another specific section does not prevent its allowance under the general provision. Cf. *McNutt-Boyce Co., supra* at 469. We hold that petitioner's tax payments must be taken into account as section 162 deductions in computing the 15-percent limitation under section 543(a) (8)(B).

Respondent concedes that interest expense may qualify as a section 162 deduction, see *McNutt-Boyce Co., supra*, but contends that petitioner's interest payments to Wainer do not so qualify. The issue is primarily factual.

As detailed in our findings, petitioner borrowed $42,500 on May 24, 1962, and $42,500 on December 4, 1962, from Wainer, and promptly distributed all except $7,500 of these amounts, purportedly as loans, to Carlos Marcello, J. Folse Roy, and Joseph Marcello, evidenced in part by notes to petitioner.

Petitioner here maintains that payments made on the loans from Wainer in 1962, 1963, and 1964 constituted section 162 interest deductions. To support its contention, petitioner offered testimony that it borrowed the money to finance the purchase of tracts adjacent to its property, for access to its land, and that when the contemplated purchases fell through it loaned the idle cash to solvent individuals, at interest rates higher than it could have obtained elsewhere, to minimize its interest expense.

We are not convinced that these funds were borrowed for petitioner's benefit. While petitioner was engaged in land purchase negotiations when it arranged the Wainer loans, all these negotiations had failed before the loan proceeds were actually received. No effort was made to postpone receipt of the loan proceeds until a land purchase was imminent. Indeed, the inference is clear, we believe, that the real reason for the consummation of the loans when no land purchases were in

prospect was to permit petitioner to disburse funds to the individuals who ultimately received them. As detailed in our findings, the individuals gave notes to petitioner for sums less than the total amounts they received. Only minimal payments have been made to petitioner on the purported "loans" and no interest income was reported by petitioner, at least through 1964. Finally, when the loans payable to Wainer became due, petitioner did not pay them off but extended them—action wholly inconsistent with its alleged desire to minimize interest expense. We conclude that petitioner's interest payments to Wainer were not ordinary and necessary expenses paid or incurred in carrying on *petitioner's* business and, consequently, are not deductible under section 162.

Quite clearly, the net operating loss deduction claimed and allowed in 1959 was not an expense paid or incurred in that year within the meaning of section 162. It was a loss incurred in a prior year, allowed as a deduction under a statute designed "to ameliorate the unduly drastic consequences of taxing income strictly on an annual basis." *Libson Shops, Inc.* v. *Koehler*, 353 U.S. 382, 386 (1957). Accordingly, the loss may not be taken into account in applying the 15-percent limitation prescribed by pre-1964 section 543(a)(8)(B).

Applying these conclusions as to the character of petitioner's deductions, we have set forth in our findings the ratio of petitioner's section 162 deductions to its gross income for the years in issue. Only in 1961 did such deductions constitute 15 percent or more of petitioner's gross income. Petitioner is, therefore, liable for the personal holding company tax for 1959, 1960, and 1963.

2. *The year 1964.*—Under the personal holding company provisions in effect for taxable years beginning after December 31, 1963, any corporation, with specified exceptions not applicable here, is subject to the tax if, among other requirements, at least 60 percent of its adjusted ordinary gross income is personal holding company income. Sec. 542(a)(1). "Mineral, oil and gas royalties," adjusted, pursuant to section 543(b)(2)(B), for property and severance taxes, depreciation, depletion, interest, and rent paid, are personal holding company income unless each of the following tests, prescribed by section 543(a)(3), is met: (1) The adjusted royalty is at least 50 percent of the adjusted ordinary gross income; (2) other personal holding company income is not more than 10 percent of the ordinary gross income; and (3) section 162 business deductions are at least 15 percent of adjusted ordinary gross income.

Petitioner had no income in 1964 except $4,912.19, previously deducted as percentage depletion and returned as income in that year under section 1.612-3(a)(2), Income Tax Regs. Thus, again, the issue

is whether such sums constitute royalties.[11] For the reasons stated above, we hold they do not, and since these sums are not described in any other paragraph of section 543(a), we conclude that petitioner had no personal holding company income in 1964.[12]

B. *Income tax issue.*—The only income tax issue concerns the amount petitioner may deduct in 1962, 1963, and 1964 for interest paid on the Wainer notes. Respondent has conceded that any interest actually paid is deductible under section 163;[13] the dispute concerns the amount of the payments subject to treatment as interest.

The two notes executed by petitioner were each in the face amount of $56,450, but petitioner received only $42,500 from each loan. To repay each loan, petitioner was to make 35 equal consecutive monthly payments of $387.50 plus a final payment of $42,887.50 (equal to the principal advanced by Wainer plus $387.50). Respondent contends that the payments made during the years in issue should be allocated to interest and principal in the ratio of the total discount on each loan to its total face amount. In claiming the interest deductions in its returns, petitioner did allocate each year's payments in such a manner, but now maintains that it and Wainer had agreed that each of the 35 installment payments and $387.50 of the final "balloon" payment were to be applied to interest, and that the final payment less $387.50, i.e., $42,500, was all to be applied to the principal.

The general rule is that where the parties to an installment loan make no agreement as to allocation of payments to interest and principal, the amount of interest or discount is prorated over the term the payments are to be made, see *John Randolph Hopkins*, 15 T.C. 160, 181 (1950), accord, *Phillips* v. *Frank*, 185 F. Supp. 349 (W.D. Wash. 1960), and each payment is credited first to interest up to the maximum amount of accrued prorated interest and then to principal. See *Theodore R. Plunkett*, 41 B.T.A. 700, 705, 709 (1940), affd. 118 F. 2d 644 (C.A. 1, 1941) (applying local law); cf. *Irving* v. *E. Sondheimer Co.*, 126 So. 2d 401, 408 (La. App. 1960). However, where the parties agree

---

[11] If the disputed amounts were royalty income, the first two tests of sec. 543(a)(3), enumerated in the immediately preceding paragraph, would be met. However, petitioner's only deductions in 1964, other than an interest deduction, amounted to $430.51. But since sec. 543(a)(3)(C) provides that "deductions which are specifically allowable under sections other than section 162" may not be taken into account in computing the sum of the deductions allowable under sec. 162, and interest is allowable under sec. 163, it may not be taken into account in making the 15-percent adjusted ordinary gross income computation. Therefore, the third test would not be met.

[12] The item here in dispute is a sum equal to the depletion deduction allowed for 1963, prior to the amendments made by sec. 225(d), Revenue Act of 1964, 78 Stat. 19. In view of the changes in the personal holding company tax provisions, particularly the adjustments to mineral, oil, and gas royalty income prescribed by sec. 543(b)(2)(B), we do not here decide whether sums equal to depletion deducted in 1964 or later years and subsequently returned as income under sec. 1.612–3(a)(2) of the regulations may be subject to treatment as royalty income in computing "adjusted ordinary gross income" under sec. 543(a)(3)(B).

[13] SEC. 163. INTEREST.

(a) GENERAL RULE.—There shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness.

as to the allocation of a payment between principal and interest, such agreement will be given effect. *Huntington-Redondo Co.*, 36 B.T.A. 116 (1937); accord, *Estate of Hamilton C. Rickaby*, 27 T.C. 886, 891 (1957). Thus, where a borrower and a lender, in a bona fide arm's-length transaction, agree that installment payments on a discounted note are to be applied first to interest, the total amount of such payments may be deducted as interest.

The resolution of this issue turns then on a purely factual question as to whether petitioner and Wainer entered into such an agreement. We are convinced that they did.

George Wainer testified to the effect that the 36 payments were intended to be interest payments, i.e., in their full amount for the first 35 and to the extent of $387.50 in the final payment. Thus, on completion of 36 monthly payments of $387.50, petitioner would owe $42,-500, the precise amount advanced by Wainer. Furthermore, a letter written on the day following the first loan, by petitioner's vice president (who had negotiated the loan) to its accountant, directing the latter to make several payments to Wainer, contained the following: "I am enclosing herewith copy of a note which must be paid monthly, these payments covering interest. Please set this up and see that these interest payments are paid when due." In the light of this evidence, we have found as a fact that such monthly payments were intended to be, and were, interest. As such they are deductible under section 163. We think the evidence supporting this conclusion outweighs whatever probative effect may be given to the bookkeeping entries which were not made in accordance with the written instructions issued to the accountant.

Reviewed by the Court.

*Decision will be entered under Rule 50.*