J. G. DYER and Ella R. Dyer, and S. T. Dyer and Elizabeth C. Dyer, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 6302.

United States Court of Appeals Tenth Circuit.

Aug. 21, 1961.

Frank M. Cavanaugh, Denver, Colo., for petitioners.

Melva M. Graney, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, and Joseph Kovner, Washington, D. C., were with her on the brief), for respondent.

Before MURRAH, Chief Judge, and BRATTON and BREITENSTEIN, Circuit Judges.

BRATTON, Circuit Judge.

The appeal in this case presents for determination the question whether a lump sum of $447,500 which the taxpayers received in 1954 as consideration for the assignment of a fractional interest in certain mineral leaseholds was taxable as ordinary income, subject to depletion, or as capital gain. The taxpayers, J. G. Dyer and S. T. Dyer, joined by their respective wives, returned the sum as capital gain. The Commissioner of Internal Revenue determined that it was ordinary income, subject to depletion; and a resulting deficiency followed. The Tax Court upheld the action of the Commissioner, 34 T.C. 513; and the taxpayers appealed.

As found by the Tax Court, these were the material facts and circumstances. In 1954 and for many years prior thereto, the taxpayers were engaged in the development, production, and operation of mineral properties; and they kept their books and filed their income tax returns on the calendar year, cash basis. Prior to January 1, 1954, the taxpayers owned in the proportion of three-fourths to J. G. Dyer and one-fourth to S. T. Dyer, seventy-five per cent of the working interest in each of several oil and gas leases covering land in the area known as the South Big Muddy Field in Wyoming. These interests had been obtained in four or five separate farm out transactions with Continental Oil Company, beginning in 1950. Twenty-two wells had been drilled, fifteen of which were producing wells. The remaining twenty-five per cent of the working interest was owned by Continental Oil Company. It was a carried interest, not liable for development and operational expenses but sharing in the proceeds above costs. At the close of 1953, the taxpayers needed cash for the development of other oil properties. As a means of obtaining such cash, the taxpayers executed an as-

signment in favor of Alpha Oil Company, hereinafter referred to as Alpha. Alpha was a corporation controlled by Wm. H. Quinette, a friend of J. G. Dyer. At the time of the assignment, Alpha had issued an outstanding one hundred shares of capital stock of one dollar par value, eight-five shares of which were owned by Quinette's wife, five by his daughter, five by his son, and five by himself. The net worth of the corporation was $260.83. Quinette was a certified public accountant. He had dealt with J. G. Dyer in the past; had given him professional advice; and the tax returns to which reference has been made were prepared in his office.

During the negotiations which led to the execution of the assignment, two offers were discussed. One was for a "walk-away" sale of $525,000, and the other was for $447,500 with the taxpayers retaining an interest in the properties thus giving them a chance to recover something more than the additional $75,000. The taxpayers elected to accept the latter. By its terms, the assignment transferred to Alpha an undivided ninety-nine per cent of the taxpayers' seventy-five per cent of the working interest in the leasehold estates. And in addition, the assignment conveyed to the assignee "all casing, tubing, rods, pumps, pumping derricks, pipelines, flow lines, tools, machinery, warehouse supplies, equipment, fixtures, houses, lease tanks, and other fixed producing facilities and other personal property located on said above-described lands or used in connection therewith. * * *" The assignment recited that in order to obtain funds with which to pay the taxpayers for the assignment, Alpha intended to borrow from a named bank $450,000 to be evidenced by a promissory note and secured by a deed of trust covering the fractional share of the working interest in the leasehold estates transferred to Alpha; that J. G. Dyer should continue to operate the leases covering the lands included in the assignment; and that when the indebtedness to the bank had been fully paid and discharged the tax-

payers would then own and hold ninety-nine and nine-tenths per cent of the interest being transferred to Alpha by the assignment, thus leaving in Alpha one-tenth of one per cent of the interest owned by the taxpayers prior to the assignment. Quinette was president of Alpha and he signed the assignments on its behalf. Alpha executed the note and deed of trust in favor of the bank, and the $447,500 received by the taxpayers came from that source. In preparation for financing the assignment, the taxpayers obtained an engineering report of the property. The report evaluated at $1,-371,626 the future net profits of the taxpayers in the property and estimated that it would pay out $450,000 in forty months, plus. The report was furnished to the bank. The loan was finally paid in full in March, 1959.

The taxpayers attack the decision of the Tax Court on the ground that under these facts and circumstances the sum which they received as consideration for the assignment was not taxable as ordinary income, subject to depletion; that instead, it was taxable as capital gain. Section 61, Internal Revenue Code of 1954, 26 U.S.C. 1958 ed. § 61, provides in presently material part that, except as otherwise provided by statute, gross income shall include gain derived from dealings in property. Section 1221 defines "capital asset" to mean property held by the taxpayer. And section 1222 defines the term "long-term capital gain" to mean gain from the sale or exchange of a capital asset held for more than six months, if and to the extent such gain is taken into account in computing gross income. Capital gain is accorded special treatment. Such treatment is intended "to relieve the taxpayer from * * * excessive tax burdens on gains resulting from a conversion of capital investments, and to remove the deterrent effect of those burdens on such conversions." Burnet v. Harmel, 287 U.S. 103, 53 S.Ct. 74, 75, 77 L.Ed. 199; Corn Products Refining Co. v. Commissioner, 350 U.S. 46, 76 S.Ct. 20, 100 L.Ed. 29; Commissioner of Internal Revenue v. Gillette Motor

Transport, Inc., 364 U.S. 130, 80 S.Ct. 1497, 4 L.Ed.2d 1617. But it is only when a capital asset appreciates in value and is subsequently sold or exchanged that the gain realized may be given such special treatment. Ordinary income derived from an income-producing capital asset is taxable as ordinary income, not capital gain. And conversion of future ordinary income from a capital asset into present receipt of lump sum payment does not entitle the taxpayer to treat the amount received otherwise than as ordinary income. Fisher v. Commissioner, 6 Cir., 209 F.2d 513, certiorari denied, 347 U.S. 1014, 74 S.Ct. 868, 98 L.Ed. 1136; United States v. Snow, 9 Cir., 223 F.2d 103, certiorari denied, 350 U.S. 831, 76 S.Ct. 64, 100 L.Ed. 741; Tunnell v. United States, 3 Cir., 259 F.2d 916; Commissioner of Internal Revenue v. Phillips, 4 Cir., 275 F.2d 33.

■ The arrangement into which the taxpayers and Alpha entered did not constitute a transaction involving a bona fide conversion of a capital asset through means of sale or exchange. The substance of the transaction was a subtle device through which the taxpayers were paid a lump sum as a substitute for that which it was believed would otherwise be received at a future time as ordinary income. In effect, the taxpayers assigned the right to receive future income up to the amount of the note given the bank, plus interest. The amount paid them was consideration in lump sum form for the right to receive future income from the property. In essence, the taxpayers received in cash the then present value of income which they otherwise would receive in the future. That sum was paid them as consideration for the right to receive anticipated ordinary income rather than as compensation for an increase in the value of the income-producing property. And it was taxable as ordinary income, subject to depletion, not as capital gain. Commissioner of Internal Revenue v. P. G. Lake, Inc., 356 U.S. 260, 78 S.Ct. 691, 2 L.Ed.2d 743, rehear-

ing denied, 356 U.S. 964, 78 S.Ct. 991, 2 L.Ed.2d 1071.

The decision of the Tax Court is affirmed.